[Civ. No. 24013.   First Dist., Div. Three.   Nov. 22, 1967.]

GRANT B. LA DEAUX, Plaintiff and Respondent, v. COUNTY OF ALAMEDA, Defendant and Appellant.

Dunivan & Byers, Dunivan, Byers and Wies, Robert D. Dunivan and Robert K. Byers for Plaintiff and Respondent.

Robert H. Sharpe as Amicus Curiae on behalf of Plaintiff and Respondent.

J. F. Coakley, District Attorney, Richard H. Klippert, Deputy District Attorney, Richard J. Moore, County Counsel, and Ben H. Zuppan, Deputy County Counsel, for Defendant and Appellant.

BRAY, J.*—The respondent Grant B. LaDeaux brought this action to recover for overtime worked while a deputy sheriff in the service of the County of Alameda. The trial court entered judgment in respondent's favor in the sum of $4,170.12.

There is little dispute about the evidence. Respondent began work for the County of Alameda in January 1945 and resigned May 1, 1963. Records of the sheriff's office show that, during his service, he accumulated 1,121 hours of overtime, based upon a 40-hour work week. He was not paid for his accumulated overtime, either by cash or compensating time off his job. Upon termination of his services, he demanded pay in cash for his overtime work. The sheriff notified him that he had no authority to make payment. The county board of supervisors declined to pay his claim on the ground that the

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

overtime worked had not been authorized, and because he had failed to seek payment on a regular monthly basis.

The county salary ordinance was in evidence. It was stipulated that its pertinent provisions were unchanged throughout the period of time covered by respondent's overtime claim. Paragraph 12 of the ordinance relates to compensation for overtime services of employees of the county. The relevant provisions of the ordinance are quoted below.[1]

There was evidence that, in certain situations, as where the sheriff's deputies were required to work overtime at the

[1]"PARAGRAPH 12—COMPENSATION FOR OVERTIME: 1. *Overtime Pay Rate*—Anything in this Ordinance to the contrary notwithstanding and except as hereinafter provided, each hour of authorized overtime necessarily performed by an employee or appointive officer of the County shall be paid for at the hourly rate applicable to the compensation of such employee. . . . 2. *Overtime Defined*—'Overtime work' as used herein is hereby defined as all time which an employee or appointive officer of the County is required to work in excess of forty hours in any one week, . . . 5. *How Overtime Pay is Authorized*—No compensation for overtime work shall be allowed unless the doing of the work in overtime has been specifically found to be necessary and prior to its performance, approved in writing by the head of the office or department in which the work is to be done, nor unless the Board of Supervisors has in general terms authorized such overtime work and prior to its performance, has determined that it is necessary, provided however, that subsequent approval by the head of the office or department and the Board of Supervisors shall be sufficient where the overtime work is made necessary by a sudden emergency which could not be reasonably anticipated in time to obtain such approvals prior to the doing of such work in overtime. . . . 7. *Complete Overtime Records Required*—Each office or department shall keep complete and accurate records of the overtime worked by each employee in such office or department. If such records are not kept, employees shall not be eligible to be paid or receive time off for overtime work performed during such period, or periods, in which such records are not kept. 8. *Overtime Pay Period*—Compensation for overtime work shall be payable monthly and shall be computed up to and including the last full week prior to the 20th day of the calendar month. 9. *Overtime Compensation Method*— Overtime may be compensated for in money or by an equal amount of time off in the discretion of the head of the office or department, and if time off is granted it shall be taken at such time as the head of the office or department may determine, but within one year after the rendering of such service. . . . 12. *Compensation for Holidays*—Any employee or appointive officer who is required to work during a holiday in the course of a regularly assigned shift, or, in the event an employee's or appointive officer's regular day or days off in any week occur on a holiday, such person shall, in addition to his regular compensation, be entitled to be compensated for any such holiday. The method and rates of compensation, and the definition of the term 'holiday' shall be as specified in this paragraph, except that the requirements set forth in sub-paragraph 5 shall not apply unless such compensation is to be in money.''

Paragraph 8, subparagraph 2 of the Salary Ordinance reads: ''The compensation herein provided shall be in full for all services rendered to the County of Alameda, except as herein otherwise specifically provided, and except that overtime for which no special compensation is provided and for which time off has not been received may be added to the periods of time hereinafter specified for leave with pay.''

county fair, or in the event of overtime work in case of public peril, such as flood, the sheriff had requested, and the board of supervisors authorized payment in cash for such services.

However, it was stipulated "that no employee of the County of Alameda has ever been paid in money for overtime served in any department in the County, without prior resolution of the Board of Supervisors having first approved said overtime or, in the case of an emergency, by subsequent written approval of said Board" except the "payment of the regular salary during which times a person is taking compensatory time off from his job."

A system of "compensatory time payback" was also used by the sheriff to pay deputies for overtime services. In practice this meant giving the deputies time off the job, with pay. The county administrator and the board of supervisors were fully aware of this practice. The board of supervisors also knew that county employees were accumulating overtime and that the accumulation extended over a long period of time. It was stipulated that "the Board of Supervisors left the decision as to the granting of overtime leave to the discretion of the Department Head, if he could find time at or during which the employee would be away from the job." It would appear that the knowledge of the board concerning the overtime situation and particularly the fact that the board left the granting of overtime to the sheriff, met the ordinance requirement that the Board "in general terms" authorized the overtime work.

The sheriff kept careful records of overtime worked by employees of his department. He allowed compensating time off where possible and thereby reduced the accumulation, although much unpaid for time was owing. Some employees, upon leaving county service, were paid their overtime in cash by the simple device of adding their overtime to terminal leave, thus extending their separation date and continuing their regular pay.

There was also evidence that respondent was assigned to the civil division of the sheriff's office during a part of his employment, and it was common knowledge that, in the service of civil process, employees of this division were often required to work overtime. For seven years of respondent's service he was assigned to the "on call" list, by written assignment. Deputies on the "on call" list were required to work overtime when called.

Respondent's claims for overtime were submitted to his

superiors and approved in writing by them each month, as his services were rendered. When compensating time off was allowed it was deducted from his total, and in this way a running account of his overtime was kept up to date. The same practice was followed for others working in the sheriff's department.

The superior court found from the evidence that respondent had worked the overtime claimed and had not been compensated for it; that the board of supervisors and the sheriff knew of, consented to, and authorized his overtime services. From these and other findings the court concluded that respondent had substantially complied with the provisions of the salary ordinance in the performance of overtime and that he was entitled to payment in cash for the services rendered.

Although the parties raise many issues in their briefs, we proceed at once to the heart of the case, exposed in appellant's fourth point on appeal, in which it is urged that a public employee is not entitled to compensation for overtime work except in the manner specifically provided by law. This proposition is accepted by the respondent, who counters that he has complied with the salary ordinance of the county and hence is entitled to his compensation.

Appellant cites *Martin* v. *Henderson,* 40 Cal.2d 583 [255 P.2d 416] for the proposition that a person accepting a public office at a fixed salary is bound to perform the duties of the office for the salary stated, even though the salary be inadequate and the duties and burdens of the office later increased. In that case the court said: "The fact that normal hours of work are established and compensating time off is provided for work beyond those hours does not, of itself, give the employee a right to payment for overtime." (P. 590.) But in *Martin* the court was speaking of those situations uncontrolled by some statute or ordinance. In disapproving prior cases of the Court of Appeal, the Supreme Court expressly declared that, insofar as such cases ". . . determine that a state officer or employee, *in the absence of specific statutory authority,* is entitled to a cash payment for accrued overtime upon separation from service, they are disapproved." (P. 591.) (Italics ours.) Here, of course, statutory provisions are made by the county ordinance providing for the payment of authorized overtime in cash. The critical questions thus are whether respondent's overtime was "authorized" within the meaning of paragraph 12, subparagraphs (1) and (5) of the salary ordinance; whether the provisions of paragraph 12,

subparagraph 8 providing for payment of overtime monthly are applicable, and whether the provisions of paragraph 12, subparagraph 9, which require compensating time off to be taken within one year, operate to defeat respondent's claims. The effect of paragraph 8, subparagraph 2, quoted in footnote 1 above, must also be considered in determining the validity of the judgment.

Paragraph 12, subparagraph (1) of the Alameda County Salary Ordinance makes clear that overtime necessarily performed by county employees shall be paid for by the county. This portion of the ordinance declares the basic policy of the county, which is to pay for all services rendered to it by its employees, subject to essential procedural safeguards later spelled out in detail in the ordinance, likewise subject to any limitations contained therein.

Under the terms of the ordinance, overtime must be properly authorized by stated county officials in the manner described in the ordinance before it may become a valid charge against the county. Thus paragraph 12, subparagraph (5) requires that overtime be (a) found necessary before the services are performed; (b) approved in writing by the head of the department in which the services are rendered and (c) that the Board of Supervisors also authorize such services "in general terms" prior to performance.

The evidence in this case establishes substantial compliance with the foregoing requirements of the salary ordinance. The necessity for overtime services is shown by the establishment of the "on call" list, which clearly recognizes the need for the services of deputies at times other than during regular assigned hours. Respondent's name was on that list from time to time for over seven years of his tenure, and it is a fair inference from the record that some of his overtime services resulted from that assignment. There was evidence, too, that working overtime was essential to proper performance of the duties of the civil division of the sheriff's office where respondent also served, and that this fact was generally known. Finally, the fact that detailed records of overtime were kept by the sheriff is some recognition of the fact that it was necessary from time to time for overtime services to be rendered by the sheriff's personnel.

Approval in writing by the sheriff before rendition of the services is also found in the evidence just described. The "on call" lists were in writing, and respondent was assigned in writing on that list for a long period of time.

Finally, approval by the board of supervisors is established

by the evidence which shows knowledge on the part of the board that overtime services were being rendered by county employees, that records of such services were being kept by department heads, and that, where possible, compensatory time off was allowed employees who had overtime to their credit. The board had knowledge of all the facts, and presumably also knew of the basic policy expressed in the salary ordinance to the effect that overtime worked by county employees should be paid for. As stipulated, the board, aware of the practice, simply left the matter to the discretion of the head of the particular county department involved, and thus gave approval to their actions.

We come to the most serious question in the case, namely, whether plaintiff may recover the value of his compensatory overtime for more than one year prior to his resignation. While his uncompensated overtime had been accumulating for approximately eight years, in the last year of his service he received more compensatory overtime than he earned in that particular year. So, unfortunately for him, if the provision in the ordinance limiting compensatory overtime to ''within one year after the rendering of such service'' applies, plaintiff may not recover in this case. We find nothing in the ordinance to overcome that provision.

The ordinance, of course, provides that overtime shall be paid for either in cash or in compensatory extra time. But such provision is subject to the rules and limitations set forth in the ordinance. While paragraph 12, subparagraph (1) provides ''*Anything in this Ordinance to the contrary notwithstanding* . . . overtime . . . shall be paid for. . . .'' it limits this phrase by the words immediately following ''*and except as hereinafter provided.*'' (Italics ours.) One rule is that the sheriff has the discretion of determining whether the overtime shall be paid for in cash or in compensatory time off. The sheriff, exercising his discretion, determined that with the exceptions when he went to the board of supervisors for cash payment approval, overtime should only be paid for in time off. This is shown by the custom and by the fact that under paragraph 12, subparagraph 8 cash payments for overtime must be made monthly and no such payments were made, nor was compensation for overtime computed as paragraph 12 subparagraph 8 provides. This was for the very good reason that cash compensation was not to be paid.

It having been determined that overtime was to be paid only in time off, the one year limitation applies. There is no

provision in the ordinance to the contrary. It is contended that because plaintiff's overtime cannot now be compensated in time off and its value must be paid in cash, the situation must be considered as if the sheriff had elected during plaintiff's employment to pay him in cash, and that there is no limitation in the ordinance on the time when that cash can be collected. However, there is such limitation. The cash payment is specifically made payable monthly on a specified type of computation. Compensatory time off is limited to within the year of the service. As plaintiff's service has terminated it cannot be paid for in time off and if paid at all, must be paid in cash. Such fact does not permit of plaintiff receiving pay for a longer period than that to which he would have been entitled during his service.

Paragraph 8, subparagraph (2) of the ordinance provides "except as herein otherwise specifically provided, and except that overtime for which no special compensation is provided and for which time off has not been received may be added to the periods of time hereinafter specified for leave with pay." This provision does not change the one year time limitation in subsection (9). It should be noted that in all of the sections dealing with leaves of absence either with or without pay, limitations on length of absence are provided, a matter of significance in determining whether it was contemplated by the ordinance that compensatory time off would have no limitation.

As before stated, plaintiff's overtime earned during the year prior to his leaving the sheriff's office was compensated for by time off. Although there is overtime in prior years which is not compensated for, the one year limitation bars recovery therefor.

■ Plaintiff contends that the doctrines of unjust enrichment and constructive trust are applicable here. In *Gama* v. *County of Kern* (1960) 179 Cal.App.2d 1, 4 [3 Cal.Rptr. 370], the court said: "Appellant cites no authority and we have found none authorizing the application of the theory of 'unjust enrichment' and 'constructive trust' to the general fund of a county on an ordinary debt for alleged unpaid wage items. We have here a simple case of alleged unpaid wages from a county to its employees."

In *Slocomb* v. *City of Los Angeles* (1961) 197 Cal.App.2d 794 [17 Cal.Rptr. 529] the court, in an action brought against the city by city employees for alleged overtime services, quoted with apparent approval the above statement from *Gama* and affirmed a judgment in favor of the city.

In the case at bench, we have been cited to no authorities making applicable either of said doctrines to the situation here, which is a claim for unpaid wages for overtime.

The judgment is reversed.

Draper, P. J., concurred.

SALSMAN, J.—I dissent.

I do not read the ordinance as my associates do.

The facts are simple and undisputed. Respondent rendered overtime services to the county. Accurate records were kept of his services. His supervisor elected to compensate him by granting him time off, but did not do so. Must the county now pay him in cash? I think so.

Paragraph 12, subparagraph (1) of the county salary ordinance declares the basic policy of the county, which is to pay county employees for their overtime services. It says that *"Anything in this Ordinance to the contrary notwithstanding* and except as hereinafter provided, each hour of authorized overtime . . . *shall be paid for* at the hourly rate applicable to the compensation of such employee. . . ." (Italics ours.)

Paragraph 12, subparagraph (9) allows an employee's overtime services to be paid for by compensatory time off or by cash, in the discretion of the head of the employee's department, and says that *". . . if time off is granted* it shall be taken at such time as the head of the office or department may determine, *but within one year after the rendering of such service. . . ."* (Italics ours.) Here, as I understand the prevailing opinion, since the employee's compensatory time off was not taken "within one year after the rendering of such service" he is barred from any claim for compensation.

The result is an unjust one. The county, by electing to compensate the employee for his overtime by granting time off, defeats his claim by the simple process of failing to fulfill its promise. I would interpret the language of paragraph 12, subparagraph (9), which says that ". . . if time off is granted it shall be taken . . . within one year. . . ." to mean that the county must make the time off actually available, and if it does not do so, then payment in cash must be made.

It is clearly inferable from the record here that the county did not grant the compensatory time off it elected to give for the simple reason that the sheriff's office was short-handed, and the men could not be spared.

Edwin Kaufman, undersheriff during the time respondent rendered his services, testified: "Q. Setting aside that there was something in terms of disciplinary or otherwise, wasn't it the policy of the Sheriff's Office that you wanted people to get their time back if you could allow them to go? A. It was reasonable to assume this. We liked to cut down the overtime hours, if possible. Q. But the reason that you couldn't is because there wasn't sufficient staff? Isn't that correct? A. That could be one reason, yes.

The respondent testified: "Q. Did you ever ask to take time off in order to cut down the number of hours—A. Yes. Q. —that you claimed? A. Yes. Q. When was the first time that you asked to take time off? A. Oh, this is a long ways back in my Civil Division career. Around a vacation-period time I tried to. I think the first time, I was in the Civil Division. I asked for extra weeks on my vacation in order to get rid of it. Q. And were they granted or denied? A. They were denied. Q. On what ground? A. Well, that they just couldn't spare the time, couldn't spare me the time. They didn't have time. Q. They didn't have time? A. They couldn't spare me. This was usually the answer. Q. They didn't have enough men at the time? A. They didn't say that. They just couldn't spare me. Q. They couldn't spare you? A. That is right."

I find no testimony in the record to show that the county was ready, willing and able to grant time off to respondent to make up for his overtime, despite its promise, and accordingly I would require the county to pay him in cash.

A petition for rehearing was denied on December 22, 1967, and the opinion was modified to read as printed above. Salsman, J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied January 17, 1968.