[L.A. No. 31090. Aug. 22, 1979.]

WOODROW G. LONGSHORE et al., Plaintiffs and Appellants, v. COUNTY OF VENTURA et al., Defendants and Respondents.

**COUNSEL**

Ghitterman, Schweitzer & Herreras and Allan S. Ghitterman for Plaintiffs and Appellants.

Dorothy L. Schechter, County Counsel, and Andrew B. Gustafson, Assistant County Counsel, for Defendants and Respondents.

<hr>

**OPINION**

**RICHARDSON, J.**—Plaintiffs are one retired and seven current Ventura County deputy sheriffs who have sued the county and certain of its officers for the recognition of and payment for substantial amounts of overtime credits alleged to have been accumulated by them prior to July 1961 (pre-1961 overtime). They appeal from a judgment of dismissal, which was entered after the county's demurrer to their third amended complaint was sustained without leave to amend.

After a close examination of a series of Ventura County salary ordinances, we will conclude that the county's salary ordinances in effect between 1955 and 1961 created no vested rights to cash compensation for overtime service. We will reject a contention that the county is estopped by its representations to deny compensation rights for pre-1961 overtime. We will further hold, however, that plaintiffs' claims are neither barred by the statute of limitations nor fatally uncertain, and while affirming as to plaintiff Longshore, will reverse the judgment as to the remaining plaintiffs, remanding the case for further proceedings.

*The Complaint*

The third amended complaint contains four causes of action, the first two relating to Longshore, the third to all other plaintiffs, and the fourth to all plaintiffs. The allegations of the first may be summarized. Longshore accumulated 762 hours of authorized overtime credit between 1955 and July 1961; ordinances then in effect entitled him either to compensatory time off or, in lieu thereof, a lump sum payment at termination. All of the credits are recorded in his personnel records. Prior to June 30, 1963 (the date upon which a subsequent salary ordinance purported to "cancel" unused pre-1961 overtime), he tried to take the accumulated hours as compensatory time off but was told by defendants that the unused overtime was being "held in abeyance" until the exhaustion of current credits; but for such statements he would have exhausted all of his pre-1961 overtime credits before mid-1963. From 1962 to 1974 he relied on defendant's "representations . . .that all [pre-1961] . . . hours would be credited for him for future use." Upon

approaching his retirement in 1974, he unsuccessfully sought to reach a voluntary agreement with the county on utilization of the unused overtime. He has exhausted all of his administrative remedies. By their conduct, defendants are obligated to compensate him for those credits which he had accumulated under pre-1961 ordinances, and are estopped to assert the forfeiture provisions of subsequent salary laws.

In his second cause of action, Longshore asserts that, on the same facts, he has been deprived of property rights without due process and is entitled to recover because the county has been unjustly enriched. In the third, those plaintiffs who are still active deputies, suing for themselves and all others similarly situated, ask for a declaratory judgment defining their rights to pre-1961 overtime credit under the various applicable ordinances. In the fourth, all plaintiffs join in seeking a judicial declaration that the county's 1961-1962 salary ordinance, which purported to cancel pre-1961 overtime credits which were unused by July 1, 1963, unconstitutionally impaired plaintiffs' vested contract and property rights. The prayer of the complaint seeks the monetary value of Longshore's accumulated pre-1961 overtime credits, specific performance of the county's alleged contractual obligations to deputies currently employed holding pre-1961 overtime credits, costs, and attorneys' fees.

Defendants demurred, both generally and specially, to each count, asserting that the first and second causes of action are barred alternatively by the Tort Claims Act (see Gov. Code, § 810 et seq.; all statutory references are to that code unless otherwise cited), the governmental claims presentation statute (§ 945.4), and the constitutional proscriptions against retroactive compensation for public employees (Cal. Const., art. IV, § 17 (formerly art. IV, § 32); see also art. XI, § 10, subd. (a)). The demurrer further alleged that the third cause of action was fatally uncertain, and that the fourth was precluded by mootness, the statute of limitations, and, as to plaintiff Longshore, the inappropriateness of declaratory relief. Without specifying its reasons the trial court sustained the demurrer without leave to amend, and this appeal followed.

■ The applicable pleading rules are familiar. A judgment based on an order sustaining a general demurrer must be affirmed if any one of the several grounds of demurrer is well taken. (*California Trust Co.* v. *Cohn* (1932) 214 Cal. 619, 623 [48 P.2d 744]; *Burke* v. *Maguire* (1908) 154 Cal. 456, 461 [98 P. 21]; *Weinstock* v. *Eissler* (1964) 224 Cal.App.2d 212, 223 [36 Cal.Rptr. 537]; see *Stowe* v. *Fritzie Hotels, Inc.* (1955) 44 Cal.2d 416, 424 [282 P.2d 890].) On the other hand, any particular count which is well

pleaded will not be affected by defects in a separate cause of action, so long as inconsistent or antagonistic facts are not pled. (See *Steiner* v. *Rowley* (1950) 35 Cal.2d 713, 718-719 [221 P.2d 9]; see generally 3 Witkin, Cal. Procedure (2d ed. 1971) Pleadings, § 301, p. 1974.) ■ The complaint must be liberally construed and survives a general demurrer insofar as it states, however inartfully, facts disclosing some right to relief. (Code Civ. Proc., § 452; *Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103 [101 Cal.Rptr. 745, 496 P.2d 817]; *Venuto* v. *Owens-Corning Fiberglas Corp.* (1971) 22 Cal.App.3d 116, 122 [99 Cal.Rptr. 350].) We analyze the complaint under these principles.

*The Claims Statute and Sovereign Immunity*

■ At the outset, defendants contend that the first and second causes of action must fall because they fail to allege prior presentation and rejection of a claim. (§ 945.4.) We disagree. The claims statute applies, by its terms, only to causes of action which are governed by chapters 1 and 2 of part 3 of division 3.6 of the Government Code. Section 905, subdivision (c), specifically excludes from application of the statute those claims "by public employees for fees, salaries, wages, mileage or other expenses or allowances." Because Longshore essentially seeks recognition of a right to compensation for services performed as a county employee, his claim falls within the section 905, subdivision (c), exception.

■ Nor is Longshore barred by provisions of the Tort Claims Act granting, successively, sovereign immunity from liability for adoption of a statute (§ 818.2) or misrepresentation of public employees (§ 818.8) or discretionary acts (§ 820.2). The shield provided by the Tort Claims Act expressly excludes actions arising on contract. (§ 814; *E. H. Morrill Co.* v. *State of California* (1967) 65 Cal.2d 787, 793 [56 Cal.Rptr. 479, 423 P.2d 551].) A claim for compensation owed by an employer for services already performed is contractual, and thus is exempt. (See *Glendale City Employees' Assn.* v. *City of Glendale* (1975) 15 Cal.3d 328, 343 [124 Cal.Rptr. 513, 540 P.2d 609]; *Elevator Operators etc. Union* v. *Newman* (1947) 30 Cal.2d 799, 808 [186 P.2d 1].)

*Retroactive Compensation; Vested Rights*

■ Defendants' principal objection to the first and second causes of action is that they seek retroactive compensation for services already performed, in violation of the California Constitution. ■ A public employee is entitled only to such compensation as is expressly and

specifically provided by law. (*Van Riessen* v. *City of Santa Monica* (1976) 63 Cal.App.3d 193, 199-201 [133 Cal.Rptr. 618]; *Markman* v. *County of Los Angeles* (1973) 35 Cal.App.3d 132, 135 [110 Cal.Rptr. 610].) The statutory compensation rights of public employees are strictly limited and cannot be altered or enlarged by conflicting agreements between the public agency and its employee. (*Miller* v. *State of California* (1977) 18 Cal.3d 808, 814 [135 Cal.Rptr. 386, 557 P.2d 970]; *Boren* v. *State Personnel Board* (1951) 37 Cal.2d 634, 641 [234 P.2d 981].)

Moreover, the employee's rights are set by the law applicable at the time compensable services are rendered. The Constitution forbids state or local enactments which retroactively grant compensation for work already performed. Specifically, as to state power, the California Constitution, article IV, section 17 (formerly art. IV, § 32) provides, in pertinent part, as follows: "The Legislature has no power to grant, or to authorize a city, county, or other public body to grant, extra compensation or extra allowance to a public officer, [or] public employee . . . after service has been rendered . . . , or to authorize the payment of a claim against the State or a city, county, or other public body under an agreement made without authority of law." In a similar vein, article XI, section 10, subdivision (a), added June 2, 1970, and applicable to local entities, provides: "A local government body may not grant extra compensation or extra allowance to a public officer, [or] public employee . . . after service has been rendered . . . or pay a claim under an agreement made without authority of law." Thus, where statutes or ordinances in effect when overtime hours were logged provided no right to compensation therefor, the public entity may not subsequently grant it. (*Simpson* v. *Cranston* (1961) 56 Cal.2d 63, 69 [13 Cal.Rptr. 668, 362 P.2d 492]; *Martin* v. *Henderson* (1953) 40 Cal.2d 583, 590 [255 P.2d 416]; *Markman* v. *County of Los Angeles, supra,* 35 Cal.App.3d 132, 135; see *La Deaux* v. *County of Alameda* (1967) 256 Cal.App.2d 261, 265-266 [63 Cal.Rptr. 796].)

■ Conversely, to the extent services are rendered under statutes or ordinances then providing mandatory compensation for authorized overtime, the right to compensation vests upon performance of the overtime work, ripens into a contractual obligation of the employer, and cannot thereafter be destroyed or withdrawn without impairing the employee's contractual right. (See *Miller* v. *State of California, supra,* 18 Cal.3d 808, 815; *Kern* v. *City of Long Beach* (1947) 29 Cal.2d 848, 853 [179 P.2d 799].)

█ Mindful of the foregoing constitutional limitations, we examine successively the Ventura County salary ordinances in effect between July 1, 1955, and June 30, 1961, during which period Longshore alleges he accumulated the overtime credits here at issue. We can and do take judicial notice of these measures (Evid. Code, §§ 452, subd. (b), 459), conscious that our task is complicated by frequent changes in the county overtime policies. █ We construe the ordinances as a whole, and in context, giving effect wherever possible to the usual and ordinary import of the language used, *and avoiding interpretations which render a measure unreasonable, disharmonious, or superfluous in whole or in part.* (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

█ The ordinance of 1955-1956 (County of Ventura, Ord. No. 557), established the general policy that salaries were based upon a 40-hour week, *plus* necessary overtime, unless otherwise expressly provided, but that "[n]othing . . . shall *prevent* a department head from *permitting* an employee time off in lieu of extra time worked over and above the usual assignment." (*Id.,* § 2, italics added.) Only certain specified county departments *which did not include the sheriff's office* were authorized to order overtime work mandatorily compensable in cash or equivalent time off. (*Id.,* § 13.) Thus, Longshore's supervisors had unlimited discretion to grant or deny time off, and under this ordinance Longshore obtained no right to compensation at retirement. (*Martin* v. *Henderson, supra,* 40 Cal.2d 583, 589-590; *Markman* v. *County of Los Angeles, supra,* 35 Cal.App.3d 132, 133-135.)

A similar rule applied under the 1956-1957 ordinance (No. 594), section 2 of which, entitled "Basis of Salary Ordinance," again declared that base salary *included extra hours unless otherwise provided* and restated the *discretionary* power of "a" department head to grant compensatory *time off* for extra work. The ordinance added section 8, entitled, appropriately, "Overtime Policy." Subsection (a) reiterated the authority of *specific departments* (General Hospital, Public Works, Tax Collector, and Treasurer) to schedule *cash-compensated* overtime for regular employees "[w]henever it is impossible to obtain extra help . . . . " Subsection (b) recited the county policy against avoidable overtime. Subsections (c) and (d) described the conditions under which approval of overtime might be deemed necessary by "the" department head. Subsection (e) provided that authorized overtime work "shall" be compensated either by equivalent time off "or by paid compensation" at hourly rate equivalents of salary.

Although the ordinance did not expressly confine the payment of cash compensation to the employees of those departments which were listed in subsection (a), such a restrictive intent seems obvious in view of the county's prior clear expression of overtime policy. Moreover, if subsection (e) was construed as extending cash-compensation rights to *all* county employees, both subsection (a), which specifies those departments with cash-overtime authority, and section 2, stating the general rule of noncompensation for overtime, would be rendered surplusage. Such constructions are disfavored. (*Moyer* v. *Workmen's Comp. Appeals Bd.,* *supra,* 10 Cal.3d 222, 230.) We accordingly conclude that Longshore acquired no cash compensation rights under section 8. Rather, his expectations were defined by section 2, which limited his overtime compensation to discretionary time off. Longshore, accordingly, retains no vested right under the 1956-1957 ordinance to compensation for time off "earned" but not scheduled.

The ordinance initially adopted for 1957-1958 (No. 638) provided that "[a] department head may authorize overtime work which is compensable on the basis of compensatory time off." Such "compensatory time off" could not be "cumulated," but was "forfeited" if not used within the same calendar year or, if earned before December 31, 1957, unless it was used by December 31, 1958. (*Id.,* § 7(c).) The 1957-1958 ordinance expressly provided for a cash payment at termination for "compensatory time off earned" by the employee. (*Id.,* § 8(d).) A June 1957 amendment established that, on termination of employment, an employee was to receive a lump sum for "accumulated" overtime credits in lieu of being retained on the payroll until unused credits were exhausted. (Ord. No. 648, § 2, amending Ord. No. 638, § 7(d).)

The county concedes that these provisions apply to Longshore. Nonetheless, Longshore's rights under the ordinance, as to either compensatory time off or cash payment were forfeited under section 7(c) when not used, at the latest, by December 31, 1958. While the reference to cash payments, unlike that to time off, did not expressly contain a forfeiture clause, lump sum payments were statutorily limited to "time off earned" by the employee. Such "time off," as provided in other terms of the ordinance, could not be indefinitely accumulated. The June amendment made it even clearer that the employee was entitled to receive cash only for "accumulated" overtime credits. Read in context, the lump sum provisions appear intended only to compensate employees who terminated employment *before* the end of the calendar year in which their credits were earned, or in any event no later than December 31, 1958. Such

employees thus lost the opportunity to exhaust their overtime credits by taking equivalent time off prior to the expiration of the ordinance deadlines. We conclude, accordingly, that Longshore retains no rights to overtime credits earned under the 1957-1958 ordinance. (See *Markman* v. *County of Los Angeles, supra,* 35 Cal.App.3d 132, 133-135; *La Deaux* v. *County of Alameda, supra,* 256 Cal.App.2d 261, 267-268.)

. The county's overtime policy was altered again in December 1957. (Ord. No. 680.) All ordinance references to cumulation and cash payments were dropped, and the new overtime section provided: "A department head may authorize overtime work which is compensable on the basis of compensatory time off. The time when compensatory time off may be taken shall be determined by the department head." (*Id.,* § 7(c).) Both the 1958-1959 and 1959-1960 ordinances retained this wording (Ords. Nos. 719, § 7(c), 806, § 6.3), and the 1960-1961 law inserted the word "only" before the phrase "on the basis of compensatory time off." (Ord. No. 950, § 6.3.)

We have cautioned that "The fact that normal hours of work are established and compensating time off is provided for work beyond those hours does not, of itself, give the employee a right to payment for overtime." (*Martin* v. *Henderson, supra,* 40 Cal.2d 583, 590.) A lump sum payment for unused time may not be made "in the absence of specific statutory authority." (*Id.,* at p. 591.)

In examining the ordinances which were effective during the period 1958-1961, we think that it is significant that they contained no express authorization for cash payment in lieu of unused overtime credits. Prior references to such rights were specifically deleted, thereby strongly implying an intent to abrogate them. (See *Subsequent Injuries Fund* v. *Industrial Acc. Com.* (1963) 59 Cal.2d 842, 844 [31 Cal.Rptr. 477, 382 P.2d 597].) This presumption is further strengthened by the consistent statement in those ordinances that basic salary included necessary overtime and that extra overtime compensation was strictly limited by the ordinance provisions. (Ords. Nos. 719, § 1(b), 806, § 1.2, 950, § 1.2.) Though the ordinances declared that supervisors may authorize overtime which "is compensable," the succeeding language of the ordinances expressly *limited* the right to *time off* and *conditioned* the exercise of that right upon scheduling by the department head. The clear inference is that such scheduling was discretionary. It follows that overtime credits unused at retirement were lost.

In *Adams* v. *City of Modesto* (1960) 53 Cal.2d 833 [3 Cal.Rptr. 561, 350 P.2d 529], we recognized a city employee's right on his retirement to compensation for vacation credits which, at his supervisor's behest, were unused by the employee. The city council's resolution considered in *Adams* provided: " 'all . . . employees . . . *are hereby granted* . . . two (2) weeks vacation each year *without loss of compensation.*' " Though the resolution did not use specific words authorizing compensation for unused and unwaived vacation, we held that such a construction was compelled by the *absolute* entitlement there given to *compensated* vacation. ■ Where such an absolute entitlement exists, it is not lost by separation from service, in the absence of an express contrary provision. (P. 837; *Martin* v. *Henderson, supra,* 40 Cal.2d 583, 588; *Pohle* v. *Christian* (1942) 21 Cal.2d 83, 90 [130 P.2d 417].)

■ In contrast with *Adams, supra,* the ordinances before us make overtime explicitly compensable only by discretionary time off, thus implementing the county's consistently expressed policy "to avoid the necessity of overtime work wherever possible." (E.g., Ords. Nos. 594 (1956-1957) § 8(b), 638 (1957-1958) § 7(a), 719 (1958-1959) § 7(a), 806 (1959-1960) § 6.1, 950 (1960-1961) § 6.1.) Hence, there arose no right to compensation for unused time accruing to Longshore under the applicable ordinances for 1958-1961.

■ Relying on section 436 of the Ventura County salary ordinance in effect at the time of his retirement, Longshore asserts that he should receive a lump sum payment for *all* his accrued credits. (Ord. No. 1866, as amended.) Section 436, which was first adopted in 1968 (Ord. No. 2124, amending Ord. No. 1866), provides that employees "shall be" paid a lump sum at retirement for their "accrued" and unused overtime. Nonetheless, because of the express constitutional limitations imposed by article IV, section 17, and article XI, section 10, subdivision (a), to which all local ordinances must necessarily defer, section 436 could not create retroactive rights to compensation in 1974 for services already rendered before July 1961. Under these circumstances section 436 can have no force or effect on our determination of the reciprocal rights and obligations of the parties.

*Estoppel*

■ Longshore urges that the alleged assurances to him by defendants estop the county from denying his rights to cash compensation for all credits accumulated from 1955-1961. We are unable to accept the argument.

We have recognized and applied against public entities a doctrine of equitable estoppel. In *City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 489 [91 Cal.Rptr. 23, 476 P.2d 423], we reaffirmed our holding in *Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245], wherein we defined the four essential ingredients of the doctrine: (1) The party to be estopped must be apprised of the facts, (2) he must intend that his conduct shall be acted on, or must so act that the other party has a right to believe it was so intended, (3) the other party must be ignorant of the true state of facts, and (4) he must rely on the conduct to his injury. We have cautioned, however, that the doctrine is not available to "defeat the effective operation of a policy adopted to protect the public." (*County of San Diego* v. *Cal. Water etc. Co.* (1947) 30 Cal.2d 817, 826 [186 P.2d 124, 175 A.L.R. 747].)

 Thus, we have held that misrepresentations by a public officer as to the terms and conditions of civil service employment generally will not estop the public entity from asserting the true statutory provisions. (*McNeil* v. *Board of Retirement* (1958) 51 Cal.2d 278, 285-286 [332 P.2d 281]; *Boren* v. *State Personnel Board, supra,* 37 Cal.2d 634, 643.) In *Martin* v. *Henderson, supra,* 40 Cal.2d 583, we refused to recognize the right to overtime compensation which had been promised by internal departmental bulletins in the absence of any authorizing statutes, despite a vigorous dissent arguing that the bulletins thereby estopped the state from denying such authority. (See pp. 596-597, dis. opn. of Carter, J.)

 The relevant ordinances before us provided in effect that no right to time off would accrue until superior officials scheduled such time to suit administrative convenience. Under the principles of *Martin,* Longshore's supervisors lacked any authority to enlarge that right by representing in advance that time off would be scheduled in the future.

We distinguish the usual pension situation. The cases which have applied estoppel to the narrow area of public employee pensions, have emphasized the unique importance of pension rights to an employee's well-being, and have frequently arisen after employees were induced to accept and maintain employment on the basis of expectations fostered by widespread, long-continuing misrepresentations by their employers. In each of these instances the potential injustice to employees or their dependents clearly outweighed any adverse effects on established public policy. However, no court has expressly invoked principles of estoppel to contravene directly any statutory or constitutional limitations. (See, e.g., *Driscoll* v. *City of Los Angeles, supra,* 67 Cal.2d 297, 308-309; *Farrell* v.

*County of Placer* (1944) 23 Cal.2d 624, 630-631 [145 P.2d 570, 153 A.L.R. 323]; *Baillargeon* v. *Department of Water & Power* (1977) 69 Cal.App.3d 670, 679-681 [138 Cal.Rptr. 338]; *Crumpler* v. *Board of Administration* (1973) 32 Cal.App.3d 567, 584-585 [108 Cal.Rptr. 293].)

Here, in contrast, compensation rather than pension rights are involved. Application of estoppel to enlarge Longshore's rights would directly thwart a clear constitutional policy against retroactive compensation and would effectively purport to enforce an employment contract in contravention of law.

Moreover, Longshore, unlike the employees in *Crumpler, Baillargeon,* and *Martin,* asserts no widespread misleading practices by county; indeed, the other plaintiffs in the case before us allege no misrepresentations whatever applicable to them.

A final point distinguishing the present case from *Baillargeon, Crumpler,* and *Martin,* is that Longshore has not claimed that he was induced by the misrepresentations to perform the work in question, because the statements alleged were made only after that work had been completed. At most, Longshore avers that he might have pursued more vigorously the scheduling of his *discretionary* time off had he known the county did not necessarily intend to compensate him fully for his pre-1961 overtime credits.

We therefore hold that misrepresentations to Longshore concerning his statutory rights to salary or wages, made after performance of the work for which compensation is sought, did not enlarge Longshore's rights or estop the county from asserting the true statutory terms of employment. The general demurrer was correctly sustained as to Longshore.

*Uncertainty*

Defendants assert that, as to the plaintiffs other than Longshore, the third cause of action for declaratory relief is fatally uncertain, in that the nature of the controversy sought to be litigated is unclear. We disagree.

As we have recently explained, a complaint for declaratory relief is sufficient if it alleges facts demonstrating the existence of an actual controversy between the parties about their legal rights and duties and requests adjudication of the controversy. (*Wellenkamp* v. *Bank of*

*America* (1978) 21 Cal.3d 943, 947 [148 Cal.Rptr. 379, 582 P.2d 970].) The complaint need only apprise the defendant reasonably of the nature, source, and extent of plaintiff's claim. (*Strozier v. Williams* (1960) 187 Cal.App.2d 528, 532 [9 Cal.Rptr. 683].)

The third cause of action seeks relief on behalf of all currently employed Ventura County deputy sheriffs who allegedly had acquired overtime credits prior to July 1961. It avers that rights to compensation for these credits arose under ordinances then applicable, and that these rights are disputed. Thus, the nature, source, and extent of the claim are generally set forth.

Defendants argue that they cannot ascertain the extent of the claim, because the specific ordinances applicable to each plaintiff are not identified, and the hours of overtime worked by each deputy under each of the numerous salary laws are not described with particularity. However, defendants may readily determine such information by reference to their own employment records. ■ A demurrer for uncertainty will not lie for failure to "particularize matters 'presumptively within the knowledge' " of the defendant. (*Smith v. Kern County Land Co.* (1958) 51 Cal.2d 205, 209 [331 P.2d 645]; *Strozier v. Williams, supra,* 187 Cal.App.2d 528, 532; *Merlino v. West Coast Macaroni Mfg. Co.* (1949) 90 Cal.App.2d 106, 112 [202 P.2d 748].)

The allegations of the third cause of action are sufficiently certain.

*Statute of Limitations*

■ Defendants contend that the fourth cause of action, seeking to declare invalid the 1961-1962 salary ordinance, fails to state a claim because it reveals that underlying actions for "coercive relief" (i.e., payment of compensation) have long since lapsed under any applicable statute of limitations. Accordingly, defendants urge, declaratory relief claims arising from the same facts are also barred. (See *Abbott v. City of Los Angeles* (1958) 50 Cal.2d 438, 463 [326 P.2d 484]; *Tostevin v. Douglas* (1958) 160 Cal.App.2d 321, 330 [325 P.2d 130].) We do not agree.

Defendants argue that plaintiffs' claims for money damages accrued, as a matter of law, no later than June 30, 1963, the "deadline" provided by the 1961-1962 ordinance for exhaustion of unused pre-1961 overtime. As a general proposition, however, claims for compensation due from a public employer may be said to accrue only when payment thereof can be

legally compelled. For example, an ordinance or statute may lawfully provide that rights to cash compensation for overtime accrue only if time off credits are unused at retirement. Claims for such compensation therefore do not accrue *until retirement,* despite an employer's premature attempts to "cancel" the credits. (*Adams* v. *City of Modesto, supra,* 53 Cal.2d 833, 839-840; *Martin* v. *Henderson, supra,* 40 Cal.2d 583, 591-593.) On the other hand, credits earned under a condition requiring that they must be compensated within a time certain, would accrue immediately upon expiration of the time described.

Because the allegations applicable to the plaintiffs other than Longshore do not specify the particular pre-1961 ordinances under which the credits were claimed to have been earned, we cannot necessarily conclude that the limitations period has passed as to any or all of plaintiffs' possible compensation claims. Some may not even have accrued, a possibility which does not preclude declaratory relief. (*Abbott* v. *City of Los Angeles, supra,* at p. 463; *Maguire* v. *Hibernia S. & L. Soc.* (1944) 23 Cal.2d 719, 734 [146 P.2d 673, 151 A.L.R. 1062].) The trial court, of course, retains continuing jurisdiction to take appropriate action should it later determine that the statute of limitations has foreclosed the remaining deputies' rights to cash compensation for pre-1961 overtime.

*Mootness*

■ Defendants' final contention is that plaintiffs' attack on the constitutionality of the 1961-1962 ordinance is moot, because that statute has long since been superseded. However, the fourth cause of action, liberally construed, simply seeks a determination that any vested rights to overtime compensation earned under pre-1961 salary ordinances may not constitutionally be altered by intervening legislation. Viewed in this light, the claim is not moot.

Our disposition of this case makes it unnecessary to discuss the parties' remaining contentions.

*Conclusion*

Plaintiff Longshore has failed to state a claim for compensation for pre-1961 overtime credits. However, we have concluded that the remaining plaintiffs' claims for declaratory relief are neither fatally uncertain, nor necessarily barred by the statute of limitations.

The judgment of dismissal is affirmed as to plaintiff Longshore and reversed as to the remaining plaintiffs. Exercising our discretion in the premises, it is further ordered that each party shall bear its own costs. (Cal. Rules of Court, rule 26(a).) The cause is remanded for further proceedings consistent with this opinion.

Bird, C. J., Tobriner, J., Mosk, J., Clark, J., Manuel, J., and Newman, J., concurred.