[No. C025051. Third Dist. Aug. 29, 1997.]

AMERICAN RIVER FIRE PROTECTION DISTRICT, Plaintiff and Respondent, v.
FRANK BRENNAN et al., Defendants and Appellants.

**COUNSEL**

Mastagni, Holstedt & Chiurazzi, Richard J. Chiurazzi, Brian P. Dolin, Knitter & Lopez and David G. Knitter for Defendants and Appellants.

Robert A. Ryan, Jr., County Counsel, Melvyn W. Price and John Whisenhunt, Assistant County Counsel, and J. Steven Burris, Deputy County Counsel, as Amici Curiae on behalf of Defendants and Appellants.

Bleier Law Firm, Brenton A. Bleier and Grant A. Rosenblum for Plaintiff and Respondent.

**OPINION**

**MORRISON, J.**—Plaintiff, the American River Fire Protection District (the District), brought suit to recover payments to defendants, various retired firefighters, for a portion of their accrued but unused sick leave. The payments were made upon the firefighters' retirement pursuant to applicable negotiated memoranda of understanding. The District contended the payments violated the extra compensation clause of article XI, section 10, subdivision (a) of the California Constitution. The trial court agreed with the

District's position, and granted the District summary adjudication on the issue of the constitutionality of the payments. Believing this issue was dispositive of the case, the parties stipulated to entry of judgment to facilitate the appeal. Defendants appeal, contending the payments are constitutional. We agree and reverse the judgment.

## BACKGROUND

The District has a collectively bargained memorandum of understanding (MOU) with Sacramento Area Fire Fighters Local 522 (AFL-CIO). Prior to November 1, 1988, the MOU provided that upon retirement, accrued but unused sick leave would be converted to additional service credit in accordance with Government Code section 20862.8.[1] Effective November 1, 1988, employees were given an additional option for unused sick leave upon retirement. "At the employee's option, upon service retirement or disability retirement the District will pay for up to one-half of accumulated sick leave in the employee's account at the employee's 'regular hourly rate' which includes the employees [sic] base salary and advanced education incentives. All remaining accumulated sick leave in the employee's account will, upon retirement, be applied for retirement credit under the provisions of 20862.8 of the Public Employee Retirement System (PERS) . . . ."

The 1988 MOU between the District and the Battalion Chiefs' Organization was modified by an addendum effective March 15, 1989, to include a similar provision. Previously, the MOU provided that accrued sick leave would be applied to retirement credit.

In accordance with these agreements, several firefighters retired and were paid by the District for a portion of their unused sick leave, much of which had accrued prior to November 1988. On or about July 1, 1992, counsel for the District rendered an opinion that the sick leave buy-out program was unconstitutional as applied to sick leave accrued prior to November 1, 1988. The retired fire fighters who had been paid for such unused sick leave were told they would have to repay the amounts. The District understood that most recipients "were entirely innocent" of any wrongdoing, and conceded that it was the intent of the negotiators in the collective bargaining process that initiated the program that the sick leave buy-out would be retroactive.

---

[1] Government Code section 20862.8 provided in part: "A local miscellaneous member and a local safety member, whose effective date of retirement is within four months of separation from employment with the employer which granted the sick leave credit, shall be credited at his retirement with 0.004 year of service credit for each unused day of sick leave certified to the board by his or her employer." (Stats. 1993, ch. 1297, § 19.) This provision was repealed in 1995 (Stats. 1995, ch. 379, § 1) and replaced by the substantially similar Government Code section 20965.

Absent voluntary repayment, the District indicated it would have to file a legal action to recover the payments.

The District filed a complaint for unjust enrichment and imposition of an involuntary trust against nine retired firefighters. The first amended complaint alleged that effective November 1, 1988, the District entered into a MOU with Local 522 of the Sacramento Area Fire Fighters, pursuant to which the District agreed to pay up to one-half the accrued sick leave at the employee's regular hourly rate upon retirement. Effective November 1, 1988, the District also entered into a MOU with the Battalion Chief's Organization, and this MOU was modified by an addendum dated March 15, 1989. Under the addendum the District agreed to pay up to one-half accrued sick leave at the employee's regular hourly rate upon retirement. In 1992, the District adopted a resolution containing a similar provision for unrepresented employees. Pursuant to these agreements, the District began a policy of paying retired firefighters up to one-half their accrued sick leave upon retirement; the District had no previous policy to pay for accrued sick leave.

During 1992, counsel for the District was researching various issues pertaining to sick leave and became aware that the District's policy of paying for sick leave accrued before November 1, 1988, upon retirement was unconstitutional. The District sought to recover payments for accrued sick leave made to several retired firefighters, one battalion chief (John French) and eight members of Local 522 (the Brennan defendants), upon retirement.

French cross-complained, alleging previous MOU's between the District, or its predecessor, and the Battalion Chiefs' Organization contained provisions for lump-sum payments of unused sick leave upon retirement. French sought reinstatement with backpay and benefits if he was required to return the payments. The Brennan defendants also cross-complained, alleging all but one of them was induced to retire based on the sick leave cashout and requesting reinstatement if they were required to return the payment.

The District moved for summary adjudication on the issue of the constitutionality of the payments for accrued but unused sick leave. In opposition, French disputed the assertion that he had no prior right to cash out his accrued sick leave upon retirement. The Brennan defendants also disputed that there were no prior cashouts of accrued sick leave. Several of the Brennan defendants submitted declarations stating they had voted for the 1988 MOU in part due to the provision permitting the buy-out of unused sick leave. Two members of the negotiating team declared the District had proposed the buyout of up to one-half sick leave. Once Local 522 agreed to this provision, outstanding issues were quickly resolved. One of such issues

was a salary increase. Local 522 agreed to reduce its salary demand in light of the buyout provision.

The trial court granted summary adjudication, finding the payments for sick leave that accrued prior to November 1, 1988, were made in violation of the California Constitution. Judgment was entered ordering French and four of the Brennan defendants to pay the District between $3,701 and $8,940 each.

## DISCUSSION

Section 10, subdivision (a) of article XI of the California Constitution provides: "A local government body may not grant extra compensation or extra allowance to a public officer, public employee, or contractor after service has been rendered or a contract has been entered into and performed in whole or in part, or pay a claim under an agreement made without authority of law."

Early decisions interpreting the extra compensation clause found its framers had a narrow intention to prohibit government appropriations motivated by charity or gratitude. (*Jarvis* v. *Cory* (1980) 28 Cal.3d 562, 577 [170 Cal.Rptr. 11, 620 P.2d 598].) "By these provisions of the constitution, there is denied to the legislature the right to make direct appropriations to individuals from general considerations of charity or gratitude, or because of some supposed moral obligation resting upon the people of the state, and such as a just and generous man, although under no legal liability so to do, might be willing to recognize in his dealings with others. It was because of abuses which had crept into legislation by reason of the unlimited power theretofore exercised by the legislature in determining what individual claims should be recognized by private statute, and to relieve in some degree legislators from the importunities of persons interested in securing such appropriations, that the power of the legislature was thus limited by the present constitution of this state." (*Stevenson* v. *Colgan* (1891) 91 Cal. 649, 651 [27 P. 1089].)

Defendants contend that since the sick leave buyout was a negotiated benefit, not an individual grant motivated by charity or gratitude, it is not the type of payment prohibited by the extra compensation clause. They stress the origin of the benefit in collective bargaining and the purpose of the Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.) to permit flexibility in employee-governmental agency relations. "It is an incontestable fact of governmental employment practices that governmental agencies must compete in the labor market with non-governmental employers. Such competition includes not only salaries but sick leave time, vacations and numerous

other conditions of employment. . . . [I]n the area of employment, public agencies must compete, and if to so compete they grant benefits to employees for past services, they are not making a gift of public money but are taking self-serving steps to further the governmental agency's self-interest in recruiting the most competent employees in a highly competitive market." (*San Joaquin County Employees' Assn., Inc.* v. *County of San Joaquin* (1974) 39 Cal.App.3d 83, 87-88 [113 Cal.Rptr. 912] [upholding retroactive salary increase to date of expiration of existing salary ordinance].)

The District responds that despite this early focus on individual grants, the extra compensation clause has been interpreted to forbid grants of extra compensation to entire classes of public employees. It relies upon a line of cases in which retroactive compensation for accrued overtime was deemed extra compensation and constitutionally forbidden. In *Martin* v. *Henderson* (1953) 40 Cal.2d 583 [255 P.2d 416], two highway patrol officers, who terminated service in 1947, sought compensation for accrued overtime. Prior to 1943, they were entitled to only discretionary time off, not compensation, for overtime. In 1943 a new law granted lump-sum payments for overtime upon separation from service. The Supreme Court held the 1943 law could not be retroactive or it would constitute unconstitutional extra compensation. (*Id.* at p. 591.) Without a statutory authorization for overtime payment prior to 1943, such payments could not be made. (*Ibid.*)

*Martin* v. *Henderson*, *supra*, 40 Cal.2d 583 was followed in the companion case of *Jarvis* v. *Henderson* (1953) 40 Cal.2d 600 [255 P.2d 426] to deny an officer payment for both overtime and holidays.

In *Longshore* v. *County of Ventura* (1979) 25 Cal.3d 14 [598 P.2d 866], deputy sheriffs sought payment for substantial overtime credits accrued prior to 1961. The court stated: "The Constitution forbids state or local enactments which retroactively grant compensation for work already performed. . . . Thus, where statutes or ordinances in effect when overtime hours were logged provided no right to compensation therefor, the public entity may not subsequently grant it. [Citations.]" (*Id.* at p. 23.) A review of the applicable ordinances revealed no express authorization for cash payments for overtime. (*Id.* at p. 26.) Under the constitutional limitations, there could be no retroactive right to compensation. (*Id.* at p. 27.)

In *Adams* v. *City of Modesto* (1960) 53 Cal.2d 833 [3 Cal.Rptr. 561, 350 P.2d 529], employees who separated from service were entitled to compensation for accrued vacation time. The *Longshore* court distinguished *Adams* because the Modesto resolutions granted employees an absolute entitlement to compensation for vacation. There was no similar entitlement to compensation for overtime. (*Longshore* v. *County of Ventura*, *supra*, 25 Cal.3d at p.

27.) Finally, the *Longshore* court rejected the employees' estoppel argument. Estoppel was not available to defeat a policy designed to protect the public and the public officials had no authority to enlarge the employees' right to compensation. (*Id.* at p. 28.)

In *Van Riessen* v. *City of Santa Monica* (1976) 63 Cal.App.3d 193 [133 Cal.Rptr. 618], retired firemen sought compensation for unused sick leave. The municipal code, which had prohibited payment for sick leave, had been amended to permit the city council to adopt a resolution for payment for unused sick leave. The MOU made reference to payment for time not worked, parenthetically noting sick leave. The court found no resolution provided for payment for unused sick leave. (*Id.* at p. 199.) The court noted statutes relating to compensation for public employees are strictly construed in favor of the government. (*Id.* at pp. 199-200.) "We hold that absent some specific statutory or other lawful authorization a cash payment for accumulated sick leave, like overtime work, is not allowed. [Citations.]" (*Id.* at p. 200.)

The same reasoning was applied to deny a school employee compensation for 21 years of unused vacation time in *Seymour* v. *Christiansen* (1991) 235 Cal.App.3d 1168 [1 Cal.Rptr.2d 257]. Since the employee had no right to carry forward unused vacation time, she was entitled to compensation only for vacation accrued in her last year of employment. (*Id.* at p. 1179.) "Generally, the courts have permitted recovery only when specifically authorized by a statute, ordinance, resolution, rule, regulation, or contract in effect at the time the work was performed or the leave was earned." (*Id.* at p. 1173.)

The District contends this line of cases is dispositive. It asserts that since, prior to November 1988, there was no authorization for cash payment for sick leave, the District could not retroactively grant a cash payment for sick leave accrued before November 1988.

The defendants and amicus curiae County of Sacramento contend the sick leave buyout provision is not prohibited by the extra compensation clause of article XI, section 10 of the California Constitution.[2] They advance various arguments in support of their position. In part, they argue that firefighters

---

[2]The County of Sacramento requested permission to file an amicus curiae brief in support of appellants and we granted the request. The county was familiar with the issues involved as it had adopted a similar sick leave buyout program for retiring employees and the program had been challenged as unconstitutional extra compensation by a taxpayer. The county contends the purpose of its program is to induce retirement, encourage the retention of sick leave, and to reduce the county's costs. The county stresses the need to give local govern-

have always had the right to have unused sick leave contribute to their retirement benefits. Prior to the 1988 MOU, unused sick leave counted towards service credit. Effective November 1, 1988, for members of Local 522, and March 15, 1989, for battalion chiefs, fire- fighters had the option to receive payment for up to one-half their unused sick leave upon retirement. Defendants assert this change in benefits, from an increased pension to a cash benefit upon retirement, is not retroactive extra compensation for work already performed.

The District disputes that the sick leave buyout can be considered analogous to a pension benefit.[3] It argues that sick leave is a valuable benefit that may provide compensation during the period of employment. It is not a form of deferred compensation as is a pension benefit. (*Miller* v. *State of California* (1977) 18 Cal.3d 808, 814 [135 Cal.Rptr. 386, 557 P.2d 970].) The District is correct as to sick leave as such. However, even prior to 1988, the applicable MOU's provided that upon retirement unused sick leave "would be converted to additional service credit" or "applied for retirement credit." Therefore, upon retirement unused sick leave became a component in calculating the employee's pension benefit.

The sick leave buyout provision applied only to retiring firefighters. It continued the long-standing policy of granting additional benefits at retirement to firefighters with accrued sick leave. There was no right to a cash payment for unused sick leave simply upon separation from service. This limited application shows the sick leave buyout was not extra compensation; it added an alternative to established pension benefits and perhaps an incentive to retire. Whether the alternative, cash for accrued sick leave in lieu of an increased pension, resulted in an increased benefit would depend on the individual employee's situation, particularly his longevity.[4]

The District acknowledges that the extra compensation clause does not apply to pension benefits. "If this creates an anomaly in the law, it is one

ments flexibility in designing employee benefits. It notes the Legislature has granted local governments flexibility by enacting Government Code sections 31641.04 and 31641.05, which permit boards of supervisors to adopt resolutions granting additional service credit to retiring employees for the economic benefit of the county.

[3]In response to amicus curiae, the District argues that the Legislature has made clear that payments for unused sick leave cannot be used to calculate "true" pension benefits. Under Government Code section 20636, subdivision (g)(4)(F), special compensation, a component of compensation earnable to determine pension benefits, cannot include lump-sum payments for unused sick leave. This provision prevents the artificial inflation of the compensation component of pension benefits. It does not prohibit using unused sick leave to increase pension benefits by increasing service credit or by providing a lump-sum payment in lieu of increased service credit.

[4]At oral argument the parties conceded the record contained no evidence as to how the value of the cashout compared to the value of increased service credit.

sanctioned by the California Supreme Court." (*United Firefighters of Los Angeles City* v. *City of Los Angeles* (1989) 210 Cal.App.3d 1095, 1105 [259 Cal.Rptr. 65].) The right to pension benefits vests upon the acceptance of employment. (*Miller* v. *State of California, supra,* 18 Cal.3d at p. 815.) An increase in pension benefits even after retirement is not extra compensation as that term is used in article XI, section 10 of the California Constitution. (*Nelson* v. *City of Los Angeles* (1971) 21 Cal.App.3d 916, 918 [98 Cal.Rptr. 892].) In *Nelson,* the city increased pension benefits for police officers from $250 a month to $300 a month. Retired officers and an officer's widow sought the increased pension benefit; the city refused on the grounds it would violate the extra compensation clause. The court found no violation. The rationale for this rule is "that an increase in pension benefits payable to a retired public employee or his widow on pensionable status is paid as the result of rights incident to that status and not as a matter of increased compensation or allowance." (*Id.* at p. 919.)

Here, rather than increasing the pension benefit, the buyout program provided an alternative that would result in increased benefits upon retirement for some firefighters. This increased benefit is payable due to their status at retirement, not as extra compensation for work already performed.

At oral argument the District argued that permitting a retroactive buyout of sick leave at retirement would eviscerate the extra compensation clause and lead to rampant abuses in pension programs. The District noted that the plaintiffs in the line of cases beginning with *Martin* v. *Henderson, supra,* 40 Cal.2d 583, often sought to recover extra compensation at retirement. The distinguishing feature of the sick leave buyout program at issue here is that the firefighters always received some benefit from unused sick leave at retirement. There was prior authorization for granting this benefit in the form of increased service credit. By contrast, in *Martin,* the failure to take compensatory time off for accrued overtime resulted in the complete loss of the benefit. Since prior authorization is required for the use of sick leave at retirement, the extra compensation clause retains its vitality to preclude granting new benefits retroactively for services previously rendered.

Because the provision of the 1988 MOU between the District and Local 522 and the addendum to the 1988 MOU between the District and the Battalion Chiefs' Organization that permitted an employee, upon retirement, to elect to receive up to one-half his accrued sick leave in cash in lieu of increased service credit for his pension merely substituted a cash benefit at retirement for an increased pension, they did not result in extra compensation prohibited by article XI, section 10, subdivision (a) of the California Constitution.

## DISPOSITION

The judgment is reversed. Defendants shall recover their costs on appeal.

Scotland, Acting P. J., and Raye, J., concurred.

A petition for a rehearing was denied September 29, 1997.