Filed 10/28/22  Weimer v. Nationstar Mortgage CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| ROBERT WEIMER, JR., | C080550 |
| Plaintiff and Appellant, | (Super. Ct. No. SCV0035286) |
| v. | |
| NATIONSTAR MORTGAGE, LLC et al., | OPINION ON TRANSFER |
| Defendants and Respondents. | |

This case returns to us from our Supreme Court.

Plaintiff Robert Weimer, Jr., purchased real property in Carnelian Bay in 1993. He refinanced the mortgage in 2006 with a loan from defendant Bank of America, N.A. (BANA).  After defaulting, plaintiff entered into a loan modification process with BANA.  Subsequently, loan servicing was transferred, successively, to defendants Specialized Loan Servicing, LLC (SLS) and Nationstar Mortgage, LLC (Nationstar). According to plaintiff, BANA, SLS, and Nationstar successively each engaged in deliberate and negligent misconduct in the loan modification process.  In 2014, BANA

1

transferred beneficial interest in the loan to defendant U.S. Bank, N.A. (U.S. Bank), as trustee for the certificate holders of Banc of America Funding Corporation Mortgage Pass Through Certificates Series 2007-7. Eventually, Nationstar, acting as U.S. Bank's agent, recorded a notice of trustee's sale and had an agent enter onto the property and change the locks.

After plaintiff commenced this action, BANA, U.S. Bank, and Nationstar demurred to the first amended complaint. The trial court sustained the demurrer without leave to amend as to BANA, concluding that the action against it was time-barred. As to the other demurring defendants, the court sustained the demurrer with leave to amend. Plaintiff filed a second amended complaint, asserting causes of action sounding in intentional and negligent misrepresentation, negligence, trespass to land, seeking declaratory relief, and asserting violations of the unfair competition law (Bus. & Prof. Code, § 17200 et seq.). U.S. Bank and Nationstar demurred, SLS separately demurred, and the trial court sustained the demurrers without leave to amend.

On appeal,[1] plaintiff asserted that the trial court erred in concluding the action against BANA was time-barred because BANA's actions were part of a civil conspiracy

---

[1] Plaintiff separately appealed from two judgments. One judgment dismissed the action as asserted against SLS. The other judgment identified U.S. Bank, Nationstar, and, erroneously, BANA, as having successfully demurred to the second amended complaint, and ordered "these Defendants . . . dismissed from this case with prejudice." A judgment of dismissal following BANA's successful demurrer to the first amended complaint does not appear in the record, and plaintiff has not appealed from any such judgment.

"An order sustaining a demurrer is usually not immediately appealable, because it is not on its face a final judgment. [Citation.] However, it may be treated as a judgment for purposes of appeal when, like a formal judgment, it disposes of the action and precludes further proceedings." (*Thaler v. Household Finance Corp.* (2000) 80 Cal.App.4th 1093, 1098.) "[A]n appellate court may deem an order sustaining a demurrer to incorporate a judgment of dismissal." (*Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 920, disapproved on another ground in *Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1074.) Here, the order sustaining BANA's demurrer to the first amended complaint

with the other defendants, and the timeliness of plaintiff's action against BANA must be measured from the last overt act. Plaintiff further asserted that the trial court erred in sustaining the demurrers to the second amended complaint because he sufficiently stated each cause of action. Plaintiff also asserted that the trial court should have granted him leave to amend, however, he largely maintained that his complaint required no amendment.

In April 2020, a different panel of this court issued an opinion that was published in part. In the unpublished portion of the opinion, we concluded that the action as asserted against BANA was time-barred. We further concluded that plaintiff sufficiently stated causes of action sounding in intentional and negligent misrepresentation and violations of the unfair competition law against the remaining defendants--U.S. Bank, SLS, and Nationstar. In the published portion of the opinion, based on the test in *Biakanja v. Irving* (1958) 49 Cal.2d 647 and the analysis in *Southern California Gas Leak Cases* (2019) 7 Cal.5th 381 at page 397 (*Gas Leak*), we concluded that the remaining defendants had a duty of care, and that plaintiff sufficiently stated a cause of action for negligence against them.

Therefore, we reversed the judgments of dismissal as to U.S. Bank, SLS, and Nationstar and reversed the orders sustaining the demurrers as to the causes of action in the second amended complaint for intentional misrepresentation (first cause of action), negligent misrepresentation (second cause of action), negligence (third cause of action), and violations of the unfair competition law (sixth cause of action). In all other respects, we affirmed the judgments. In July 2020, our Supreme Court granted review and

without leave to amend ended plaintiff's ability to proceed further in the trial court with his case against BANA. The only step left to make that order appealable as to BANA was the formal entry of a dismissal order or judgment. BANA did not seek dismissal of the appeal. We therefore deemed the order on the demurrer to the first amended complaint to incorporate a judgment of dismissal as to BANA and reviewed the order. (See *Sisemore v. Master Financial, Inc.* (2007) 151 Cal.App.4th 1386, 1396.)

3

deferred further action pending consideration and disposition of a related issue in *Sheen v. Wells Fargo, N.A.*, S258019, or further order of the court.

In July 2022, the Supreme Court transferred the matter to this court with directions to vacate our prior opinion and reconsider the cause in light of *Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905 (*Sheen*). In that case, our high court addressed an issue that had divided the lower courts: "Does a lender owe the borrower a tort duty sounding in general negligence principles to . . . 'process, review and respond carefully and completely to [a borrower's] loan modification application,' such that upon a breach of this duty the lender may be liable for the borrower's economic losses—i.e., pecuniary losses unaccompanied by property damage or personal injury?" (*Id*. at p. 915.) The *Sheen* court concluded that there is "no such duty." (*Ibid*.)

In August 2022, we vacated our prior opinion and obtained supplemental briefs from the parties. The parties waived argument.

As we shall explain, we reach the same conclusions we reached in our prior opinion, with one exception. In light of *Sheen*, we now conclude that the second amended complaint does *not* state a negligence cause of action against U.S. Bank, SLS, or Nationstar. Thus, we will affirm the order on the demurrer to the first amended complaint that we deem to incorporate a judgment of dismissal as to BANA. We will reverse the judgments of dismissal in favor of U.S. Bank, SLS, and Nationstar. The orders sustaining the demurrers to the second amended complaint are affirmed in part and reversed in part. The orders are reversed as to the causes of action for intentional misrepresentation (first cause of action) and negligent misrepresentation (second cause of action) insofar as asserted against U.S. Bank and Nationstar, and as to the causes of action for violations of the unfair competition law (sixth cause of action) insofar as asserted against U.S. Bank, SLS, and Nationstar. In all other respects, we will affirm the judgments.

## FACTUAL AND PROCEDURAL BACKGROUND

The following is taken from our prior opinion. (See *Weimer v. Nationstar Mortgage LLC* (2020) 47 Cal.App.5th 341, judg. vacated and cause remanded for further consideration in light of *Sheen, supra*, 12 Cal.5th 905.)

Plaintiff purchased the subject property in Carnelian Bay in or about 1993 and alleged that he "maintained it as one of his principal residences." He refinanced the mortgage on the property on or about May 25, 2006,[2] with a loan from BANA. Plaintiff alleged that, in or about January 2008, BANA froze his bank accounts, and, as a result, he was not able to pay his mortgage payments for approximately three months. Additionally, BANA cancelled plaintiff's line of credit for unknown reasons, which negatively affected his credit score. Plaintiff alleged that he never found out why BANA froze his accounts and cancelled his line of credit.

As a result of his delinquency, plaintiff entered into a loan modification process with BANA. In or about mid-2009, an agent, employee, or representative of BANA told plaintiff that he was approved for a loan modification that would reduce his monthly payments to $8,000 per month, reduce and fix his interest rate, and "reduce his principal" by $500,000. BANA required plaintiff to make a down payment of $50,000 to secure the loan modification, and, once it received that payment, it would halt the foreclosure sale. Plaintiff asserted that his wife sent BANA a check for $50,000.[3] However, the

---

[2] The complaint states that plaintiff refinanced with BANA in 2007. However, in his brief on appeal, plaintiff represented that this was error, and that he "would amend this allegation to include the correct year of 2006." Whether plaintiff refinanced with BANA in 2006 or 2007 is immaterial to this appeal.

[3] Defendants filed a request that we take judicial notice of a memorandum of authorities filed in federal district court by plaintiff in an unrelated case which, according to defendants, would be relevant to prove that it was someone other than plaintiff's wife who tendered the $50,000 payment. We deny defendants' request for judicial notice on the ground that the identity of the individual who tendered the $50,000 payment on

foreclosure sale was not postponed, and plaintiff "was forced to file a chapter 11 bankruptcy to stop the foreclosure sale." BANA did not furnish the loan modification.

In or about early 2010, servicing of the loan was transferred from BANA to SLS. Plaintiff alleged that SLS notified him that it would take over for BANA in handling his loan modification application.[4] From early 2010 through January 2014, plaintiff attempted to obtain a permanent loan modification from SLS. However, during this time period, SLS "refused to honor the terms of the loan modification promised by" BANA, notwithstanding the one-time $50,000 payment. Plaintiff repeatedly submitted identical and updated loan modification applications and documents to SLS. Often, plaintiff was told that the documents were not received despite plaintiff having sent them directly to the addresses and individuals specified by SLS. Plaintiff alleged that SLS mishandled or lost the applications and documents. SLS continued to represent to plaintiff that he would be approved for a loan modification with terms similar to those previously offered by BANA. Meanwhile, "[a]s a result," plaintiff continued to accumulate arrears, penalties, and fees, and his credit continued to suffer. Additionally, plaintiff expended time, money, and effort in his attempts to obtain the loan modification.

---

plaintiff's behalf is not relevant to any of the issues we must resolve on appeal. (See *Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 [matter to be judicially noticed must be relevant to a material issue].)

[4] The complaint does not state whether SLS volunteered to plaintiff that it would take over the loan modification process or whether it so informed plaintiff in response to an inquiry by plaintiff. The complaint alleges: "In or about early 2010, the servicing rights of the Subject Loan were transferred from [BANA] to SLS. SLS informed Plaintiff that they would take over for [BANA] in handling Plaintiffs' loan modification application. [¶] As a result, Plaintiff renewed his attempts to obtain a loan modification from SLS." Reading the language of the complaint liberally (see *Longshore v. County of Ventura* (1979) 25 Cal.3d 14, 22 (*Longshore*)), we assume SLS voluntarily notified plaintiff that it would take over the modification process without an inquiry by plaintiff.

On or about April 1, 2014, servicing of the loan was transferred from SLS to Nationstar. Nationstar informed plaintiff that, as a result of the transfer, he would have to begin the loan modification application process anew.[5] Nationstar refused to honor BANA's "previous representation of a permanent loan modification." Plaintiff once again had to submit the same applications and documents on multiple occasions, and was told to send them to locations in Arizona, Texas, and California. A named employee or agent of Nationstar told plaintiff that he was being evaluated for a Home Affordable Modification Program (HAMP) loan modification, sent him the application, and told him to complete it and submit it along with supporting documents.[6] Thus, according to the complaint, Nationstar "represented and led Plaintiff to believe that he was eligible to apply for and receive a HAMP loan modification." However, plaintiff could not qualify for a HAMP loan modification because his loan, at $2,000,000, was well above the applicable maximum of $729,750. Plaintiff alleged that Nationstar was aware of this. According to plaintiff, Nationstar had him apply for a HAMP loan modification "so Plaintiff would maintain his delinquency and Nationstar would retain its status as a

---

[5] Similar to SLS, the complaint does not specify whether plaintiff was informed by Nationstar that it would take over the modification process because he inquired or whether SLS or Nationstar so informed plaintiff without an inquiry by plaintiff. The complaint alleged: "On or about April 1, 2014, the servicing rights of the Subject Property were transferred to Nationstar. [¶] At the time the transfer [from SLS to Nationstar] occurred Plaintiff was in the middle of applying for a loan modification with SLS. Nationstar informed Plaintiff that as a result of the transfer he would have to start the loan modification process over again." (Capitalization omitted.)

[6] " '[T]he United States Department of the Treasury implemented the Home Affordable [Modification] Program (HAMP) to help homeowners avoid foreclosure during the housing market crisis of 2008. "The goal of HAMP is to provide relief to borrowers who have defaulted on their mortgage payments or who are likely to default by reducing mortgage payments to sustainable levels, without discharging any of the underlying debt." ' " (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 56, fn. 1 (*Lueras*).)

'special servicer' for servicing a delinquent account and would enable it to collect additional fees for servicing a delinquent loan." (Capitalization omitted.) In the alternative, plaintiff asserted that Nationstar acted unreasonably in evaluating him for a loan modification for which he was not qualified. Plaintiff asserted that, like the servicers before it, Nationstar lost or misplaced plaintiff's applications and documents.

According to plaintiff, "[o]n or about, June 23, 2014, an Assignment of Deed of Trust was effectuated whereby [BANA] transferred its purported beneficial interest under the Deed of Trust to the U.S. Bank securitized trust."[7]

On or about August 15, 2014, Nationstar hired Cyprexx to enter the subject property and change the locks. Plaintiff learned of this development after a notice was placed on his door. Plaintiff contacted Cyprexx, and a named representative told him that Nationstar had hired Cyprexx to secure and winterize the premises. Plaintiff alleged that Nationstar and Cyprexx knew plaintiff was still occupying the home. Plaintiff reentered the property, installed new locks, and directed a caretaker to maintain the property while he was out of town on business.

Plaintiff alleged that defendants' actions constituted a continuing conspiracy to defraud and take advantage, and, therefore, the statute of limitations should be tolled until completion of the last overt act. Plaintiff further alleged that it was defendants' plan to engage him in the loan modification process, with no intent to grant his loan modification applications, so that they could obtain additional compensation for servicing a delinquent mortgage account and collect additional fees for every loan modification application he submitted.[8]

---

[7] Plaintiff asserted that this assignment and transfer was void ab initio but has since abandoned that claim.

[8] Thus, contrary to the contention of defendants' counsel at oral argument before this court, reading the language of the complaint liberally (see *Longshore, supra*, 25 Cal.3d at

In a first amended complaint, plaintiff asserted eight causes of action against defendants: (1) intentional misrepresentation, (2) negligent misrepresentation, (3) promissory estoppel, (4) breach of contract, (5) negligence, (6) trespass to land, (7) declaratory relief, and (8) violation of Business and Professions Code section 17200.

Defendants Nationstar, BANA, and U.S. Bank demurred to the first amended complaint. They asserted, among other things, that plaintiff's claims against BANA were all time-barred, and that, as to U.S. Bank and Nationstar, plaintiff failed to adequately state claims as to each cause of action. Defendants also requested that the trial court take judicial notice of certain documents and instruments, including several documents related to plaintiff's bankruptcy. Plaintiff filed his own request for judicial notice.

The trial court granted the requests for judicial notice. The trial court then sustained defendants' demurrer to the first amended complaint. The court stated that the "conclusory and overlapping allegations in the [first amended complaint] focus primarily upon the purported wrongful actions and conduct of defendant [BANA], which are followed by further conclusory allegations based primarily upon [BANA's] actions that plaintiff purports are attributable to defendants Nationstar and SLS. It is this deficient pleading that subjects plaintiff's [first amended complaint] to successful challenge by defendants in light of the prior bankruptcy. [Citations.] This same deficient pleading also subjects the [first amended complaint] to challenge based upon judicial estoppel. [Citation.] Even if the court were to accept the contentions made by plaintiff, which it does not, the eight causes of action are simply pled in too conclusory a manner to support the claims asserted against the moving defendants. Furthermore, the causes of action

_____

p. 22), it does allege that defendants sought to collect application fees for each loan modification application submitted, and it could be inferred that such fees were collected. Whether plaintiff could prove this allegation, or whether the collection of fees with each loan modification application is "prohibited by law" as asserted by defendants' counsel at oral argument, is immaterial here.

alleged against defendant [BANA] . . . are barred in light of the applicable statutes of limitations. It is for these reasons that the demurrer is sustained." The court sustained the demurrer with leave to amend as to defendants U.S. Bank and Nationstar, finding that, although the allegations were conclusory and failed to support plaintiff's claims, plaintiff presented a sufficient showing of his ability to cure the defects but sustained the demurrer without leave to amend as to BANA given that the time-barred nature of those causes of action could not be cured by amendment.

Plaintiff then filed a second amended complaint, asserting six causes of action as to U.S. Bank, SLS, and Nationstar: (1) intentional misrepresentation, (2) negligent misrepresentation, (3) negligence, (4) trespass to land, (5) declaratory relief, and (6) violation of Business and Professions Code section 17200. Plaintiff abandoned his promissory estoppel and breach of contract causes of action.

U.S. Bank and Nationstar demurred to the second amended complaint on the same grounds asserted in their first demurrer. Again, these defendants filed a request for judicial notice. The trial court granted the request for judicial notice and sustained the demurrer without leave to amend, concluding that plaintiff's allegations were insufficient to state causes of action. The court entered judgment in favor of BANA, U.S. Bank, and Nationstar, dismissing the action insofar as asserted against them.

SLS filed its own demurrer to the second amended complaint and a request for judicial notice. The trial court sustained the demurrer, dismissed the second amended complaint as asserted against SLS without leave to amend, and entered judgment.

## DISCUSSION

### I

*Standard of Review*

A demurrer tests the sufficiency of the complaint as a matter of law, and it raises only questions of law. (Code Civ. Proc., § 589, subd. (a).) "We review a trial court's decision to sustain a demurrer for an abuse of discretion." (*Zipperer v. County of Santa*

10

*Clara* (2005) 133 Cal.App.4th 1014, 1019.) " ' " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the [complaint] a reasonable interpretation, reading it as a whole and its parts in their context." ' " (*Finch Aerospace Corp. v. City of San Diego* (2017) 8 Cal.App.5th 1248, 1251-1252.) "[T]he complaint must be liberally construed and survives a general demurrer insofar as it states, however inartfully, facts disclosing some right to relief." (*Longshore, supra*, 25 Cal.3d at p. 22; see also *Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150, 1162 (*Daniels*) [we decide "whether a cause of action has been stated under any legal theory when the allegations are liberally construed"], disapproved of on another ground in *Sheen, supra*, 12 Cal.5th at p. 948, fn. 12.) "In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory. [Citation.] Where the demurrer was sustained without leave to amend, we consider whether the plaintiff could cure the defect by an amendment. The plaintiff bears the burden of proving an amendment could cure the defect." (*T.H. v. Novartis Pharmaceuticals Corp*. (2017) 4 Cal.5th 145, 162.)

II

*The Action Against BANA*

A. *Statutes of Limitations and Commencement of this Action*

"The statute of limitations to be applied in a particular case is determined by the nature of the right sued upon or the principal purpose of the action, not by the form of the action or the relief requested." (*Barton v. New United Motor Manufacturing, Inc*. (1996) 43 Cal.App.4th 1200, 1207, citing *Davies v. Krasna* (1975) 14 Cal.3d 502, 515 & *Jefferson v. J.E. French Co*. (1960) 54 Cal.2d 717, 718.) "What is significant for statute of limitations purposes is the primary interest invaded by defendant's wrongful conduct."

11

(*Barton*, at p. 1207.) BANA acknowledges that the applicable limitations periods here were up to four years.[9]

The claims plaintiff asserted against BANA, all arising out of the handling and processing of plaintiff's loan modification, were based on actions taken by BANA prior to "early 2010," when "servicing rights of the Subject Loan were transferred from [BANA] to SLS," at which time "SLS informed Plaintiff that they would take over for [BANA] in handling Plaintiff's loan modification application." Plaintiff commenced this action by filing the summons and complaint in October 2014. Thus, without resorting to a theory of civil conspiracy and the last overt act doctrine, plaintiff's action asserted against BANA would be time-barred based on a four-year limitations period, the longest of the applicable statutes of limitations.[10]

---

[9] See Code of Civil Procedure section 337, subdivision (a), providing that the statute of limitations for an action on any contract founded on an instrument in writing is four years and Business and Professions Code section 17208, providing that the limitations period for unfair and unlawful business practices is four years. "The duration of the limitations period applicable to a declaratory relief action is determined by the nature of the underlying obligation sought to be adjudicated." (*Snyder v. California Ins. Guarantee Assn.* (2014) 229 Cal.App.4th 1196, 1208; see also Code Civ. Proc., § 338, subd. (d) [limitations period for cause of action sounding in intentional misrepresentation is three years]; *Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Associates, Inc.* (2004) 115 Cal.App.4th 1145, 1155, citing Code Civ. Proc., § 339 [cause of action for negligent misrepresentation governed by two-year statute of limitations where allegations amount to a claim of professional negligence]; *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2016) 6 Cal.App.5th 1207, 1224 and fn. 5, affirmed (2018) 4 Cal.5th 637, citing Code Civ. Proc., § 339, subd. (1) [statute of limitations for promissory estoppel based on oral promises is two years]; *Hydro-Mill*, at p. 1154 [claim based on professional negligence governed by two-year statute of limitations set forth in Code Civ. Proc., § 339, subd. (1)].)

[10] The declaratory relief cause of action in the first amended complaint was the only cause of action arguably not premised on the handling of the loan modification process. However, as to BANA, plaintiff only alleged that it had no right to service or administer the loan because the transfer of the beneficial interest in the loan from BANA to U.S.

12

B. *Plaintiff's Contentions, Civil Conspiracy, and the Last Overt Act Doctrine*

Plaintiff alleged that the action against BANA was not time-barred because BANA was part of an ongoing civil conspiracy among defendants. Plaintiff asserts that, under a civil conspiracy theory, the statute of limitations does not begin to run until the last overt act. Plaintiff maintains that the recording of the Notice of Trustee's Sale in August 2014 should be deemed the last overt act, and, therefore, this action insofar as asserted against BANA was not time-barred.

"Proof of a civil conspiracy triggers the 'last overt act' doctrine." (*People ex rel. Kennedy v. Beaumont Investment, Ltd.* (2003) 111 Cal.App.4th 102, 138.) "[W]hen a civil conspiracy is properly alleged and proved, the statute of limitations does not begin to run on any part of a plaintiff's claims until the 'last overt act' pursuant to the conspiracy has been completed." (*Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 786.) Thus, we must determine whether the complaint sufficiently alleged a conspiracy between defendants.

C. *Analysis*

In the first amended complaint, under the subheading, "Tolling of the Statute of Limitations," plaintiff alleged, in pertinent part: "Plaintiff alleges that Defendants' actions constitute a continuing conspiracy to defraud and take advantage of Defendants [*sic*] and as such, the statute of limitations should be tolled until the completion of the last overt act. Plaintiff alleges that none of the Defendants actually had the intent to grant him a loan modification and that it was Defendants' plan to engage Plaintiff in the loan modification process because they were able to obtain additional compensation for servicing a delinquent mortgage account as well as collect additional fees for every loan modification application Plaintiff submitted."

---

Bank was void ab initio. As set forth *ante*, any contentions concerning BANA's servicing of the loan, which ceased in early 2010, are time-barred.

13

Plaintiff further alleged that he was not knowledgeable in matters pertaining to the mortgage or banking industries, that the facts constituting defendants' fraudulent and illegal activities were purposely hidden from him, and that he did not become aware of the extent of defendants' fraudulent and illegal conduct until he retained counsel in August 2014. Plaintiff asserts that each subsequent cause of action incorporated these allegations. We agree with defendants that plaintiff has offered only conclusory assertions of a conspiracy, rather than alleging any facts that could establish the existence of a conspiracy. In *Daniels, supra*, 246 Cal.App.4th 1150, the plaintiffs purported to assert a cause of action for civil conspiracy "in which they allege respondents 'conspired' to 'deceive and defraud' them into participating in the loan modification process." (*Id*. at p. 1172.) The *Daniels* court considered "whether appellants adequately allege[d] that [BANA's] misrepresentations were made pursuant to an agreement among [BANA], U.S. Bank, SPS, and ReconTrust to defraud appellants" (*id*. at p. 1173), essentially the same question we must answer in relation to defendants in the instant action for purposes of making our determination as to whether the action against BANA is time-barred. As defendants emphasize, the *Daniels* court concluded: "Appellants' conspiracy allegations are too conclusory. As to the first element, they allege respondents 'agree[d] . . . to deceive [appellants] into participating in the loan modification processes.' There are no factual allegations about the nature of that agreement. Critically, appellants do not allege that respondents agreed to defraud them before the alleged misrepresentations were made (between 2009 and June 2012). Nor can we reasonably infer from the facts alleged that respondents agreed to defraud appellants before the misrepresentations were made, since appellants allege SPS did not become their loan servicer until December 1, 2012 and ReconTrust did not become trustee until August 2012. For these reasons, we conclude the trial court did not err in sustaining SPS and U.S. Bank's demurrer as to the civil conspiracy cause of action without leave to amend, nor in granting [BANA] and

14

ReconTrust's motion for judgment on the pleadings without leave to amend as to that claim." (*Ibid.*)

Similarly, we conclude here that plaintiff's allegations of a civil conspiracy are too conclusory. Like in *Daniels*, plaintiff merely asserted that defendants were involved in a conspiracy to defraud him and asserted that "it was Defendants' plan to engage Plaintiff in the loan modification process because they were able to obtain additional compensation for servicing a delinquent mortgage account as well as collect additional fees for every loan modification application Plaintiff submitted." As in *Daniels*, plaintiff offered no factual allegations about the nature of the alleged conspiracy. (*Daniels, supra*, 246 Cal.App.4th at p. 1173.) Also like in *Daniels*, plaintiff does not, and it appears he cannot, allege that BANA and its codefendants agreed to defraud plaintiff before or at the time any of BANA's misrepresentations were made, all prior to early 2010, during which time BANA remained the servicer of the loan. And, like in *Daniels*, we cannot infer that defendants, including BANA, agreed to defraud plaintiff before such alleged misrepresentations were made because SLS did not begin servicing the loan until 2010, and Nationstar did not begin servicing the loan until 2014. There are no allegations that SLS or Nationstar were involved in any way with plaintiff's loan until those dates, and there are no factual allegations addressing a civil conspiracy during those times in question. SLS and Nationstar were not alleged to have any connection to plaintiff's loan so as to be coconspirators with BANA at the relevant times.

In his reply brief, plaintiff relies on *AREI II Cases* (2013) 216 Cal.App.4th 1004. In that case, the court stated: "It is well settled that ' "[b]are" allegations and "rank" conjecture do not suffice for a civil conspiracy.' [Citation.] A party seeking to establish a civil conspiracy 'must show that each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan, and that one or more of them committed an overt act to further it. [Citation.] It is not enough that the [conspirators] knew of an intended wrongful act, they must agree—expressly or tacitly—

15

to achieve it.' [Citation.] It must be recognized, however, that because of the very nature of a conspiracy, 'its existence must often be inferentially and circumstantially derived from the character of the acts done, the relations of the parties and other facts and circumstances suggestive of concerted action.' [Citation.] While a complaint must contain more than a bare allegation the defendants conspired, a complaint is sufficient if it apprises the defendant of the 'character and type of facts and circumstances upon which she was relying to establish the conspiracy.' " (*AREI II Cases*, at p. 1022.) However, here plaintiff has not pleaded facts and circumstances supporting the existence of a conspiracy.

In his reply brief, plaintiff belatedly asserts that he does not rely only on the loan servicers as coconspirators, but also on U.S. Bank. He argues: "[T]he conduct of all servicers was directed by the purported owner of the Subject Loan," U.S. Bank, and that "U.S. Bank controlled all of the loan servicers who serviced the Subject Loan." Plaintiff asserts that "the conspiracy could reasonably [be] inferred as between each servicer and U.S. Bank, without the need for separate conspiracy analyses."

Where a plaintiff fails to show how the complaint can be amended in their opening brief, we may properly regard any belated proposed amendments offered in the plaintiff's reply brief as forfeited. (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52, 56 [rejecting points raised for the first time in reply brief on appeal without good cause in reviewing trial court's ruling sustaining a demurrer without leave to amend].) " 'Obvious considerations of fairness in argument demand that the appellant present all of [their] points in the opening brief. To withhold a point until the closing brief would deprive the respondent of [their] opportunity to answer it or require the effort and delay of an additional brief by permission. Hence the rule is that points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before.' " (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764, quoting *Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8; see also

16

*Simpson v. The Kroger Corp.* (2013) 219 Cal.App.4th 1352, 1370 ["Raising a new theory in a reply brief is improper and unfair to defendants. We may decline to consider an argument raised for the first time in a reply brief if no good reason is demonstrated for the delay in raising the point"].) But even if we considered this argument, we would conclude that these allegations are insufficient.

In the paragraphs of the first amended complaint to which plaintiff cites for these propositions in his reply brief, he merely asserted that an agency agreement existed between U.S. Bank and the servicers; "U.S. BANK and Servicers regularly engaged in business with each other"; an agency relationship existed in which U.S. Bank directed Nationstar's conduct; U.S. Bank's control over Nationstar was pursuant to contract, was comprehensive, and U.S. Bank "directed the conduct of NATIONSTAR throughout the modification process"; and that "upon information and belief, Plaintiff alleges that because [BANA]/NATIONSTAR/SLS were acting as servicers and agents of U.S. BANK, U.S. BANK as principal is liable for all other acts complained of by Plaintiff." These allegations remain insufficient to allow us to infer a civil conspiracy implicating BANA of the sort plaintiff advances here.

Further, according to plaintiff's allegations, U.S. Bank did not acquire its beneficial interest in the loan until BANA's assignment to U.S. Bank in June 2014. Plaintiff alleged that, "[o]n or about, June 23, 2014, an Assignment of Deed of Trust was effectuated whereby [BANA] transferred its purported beneficial interest under the Deed of Trust to the U.S. Bank securitized trust." Assuming this factual allegation to be true, U.S. Bank could not have conspired with BANA or SLS with regard to the servicing of the loan, as those entities ceased servicing the loan prior to June 2014.[11]

---

[11] We note here that plaintiff does not offer any allegations involving an alleged conspiracy between BANA and U.S. Bank in connection with the transfer of the beneficial interest in the loan from BANA to U.S. Bank, but instead limits his conspiracy

Plaintiff offers in a footnote in his reply brief: "Appellant now realizes that only Nationstar is singled out under some of the allegations in the agency section of the [first amended complaint]. This was inadvertent as the allegations apply to both BANA and SLS, as well." It is not clear to us, however, that this allegation was, in fact, erroneous or inadvertent. According to plaintiff's pleadings, U.S. Bank acquired its beneficial interest in the loan after Nationstar became the servicer of the loan, after BANA and SLS had long since ceased functioning in that role. Assuming that factual allegation to be true, plaintiff's original allegations "singl[ing] out" Nationstar make sense; no entity other than Nationstar serviced the loan at the time of and following U.S. Bank's acquisition of its beneficial interest in the loan.

Also in his reply brief, plaintiff, in effect, offers to change his theory relative to BANA. For the first time, plaintiff asserts that BANA retained an ownership interest under the deed of trust until June 2014. He cites the allegation in his first amended complaint in which he alleged that, on June 23, 2014, BANA "transferred its purported beneficial interest under the Deed of Trust to the U.S. BANK securitized trust." He asserts that the first amended complaint alleges that BANA still had an ownership interest in the loan as of mid-2014 and the first amended complaint "does not give rise to the inference that BANA's role in the Subject Loan ended in or about early 2010, when SLS took over the servicing." From this, plaintiff implies that any action against BANA is not time-barred. He also asserts he should have been granted leave to amend the first amended complaint insofar as asserted against BANA, and "requests that the trial court's ruling on BANA's demurrer to the [first amended complaint] be overruled as to his first cause of action for intentional misrepresentation." Having raised these arguments for the

allegations to the servicing of the loan and the loan modification process. Nor does plaintiff assert any factual allegations to the effect that BANA, as beneficial owner of the loan as opposed to loan servicer, directed the actions of SLS or Nationstar in servicing the loan in the furtherance of any conspiracy.

18

first time in his reply brief on appeal, plaintiff has forfeited these issues, as well as any new theories or proposed amendments. (*Allen v. City of Sacramento, supra*, 234 Cal.App.4th at pp. 52, 56; *Simpson v. The Kroger Corp., supra*, 219 Cal.App.4th at p. 1370.) We conclude the trial court properly sustained BANA's demurrer to the first amended complaint without leave to amend because the action insofar as asserted against BANA was time-barred.

## III

### The Action Against U.S. Bank, SLS, and Nationstar[12]

#### A. Intentional and Negligent Misrepresentation--Nationstar and U.S. Bank[13]

##### 1. Plaintiff's Contentions

Plaintiff asserts that the trial court's reasoning in sustaining the demurrers as to his misrepresentation claims "was misguided and [plaintiff] should have been given leave to amend his" second amended complaint. The thrust of his misrepresentation claims is that defendants never intended to grant him a loan modification, "and that nullified the possibility that they would ever review his modification application in good faith." Plaintiff further asserts that defendants had their representatives make statements to him to imply that further action on his part was necessary to "get the modification process back on track" and had defendants notified him earlier that he could not qualify for a loan modification, he would have "pursued other options." Plaintiff asserts that the fact that he "was solicited to apply for a loan modification program (HAMP) that he never could have qualified for is definitively a material misrepresentation." Because his loan was too

---

[12] Plaintiff does not challenge the trial court's ruling as to his declaratory relief cause of action.

[13] The first and second causes of action in the second amended complaint are expressly asserted against Nationstar, U.S. Bank, and Does 1-50 *only*. These causes of action are not asserted against SLS. Plaintiff specifically alleges that Nationstar and its agents made the intentional and negligent misrepresentations alleged. Thus, we consider these two causes of action on appeal only as asserted against Nationstar and U.S. Bank.

large to qualify for HAMP, plaintiff asserts that he "was either fraudulently or negligently enticed into applying for a HAMP loan modification that he could not have, under any circumstances, qualified for. Accordingly, this misrepresentation was a material misrepresentation." Plaintiff further asserts that he relied on defendants' misrepresentations to his detriment. He asserts that he sustained damages in the form of damage to his credit, increased interest and arrears, lost opportunity for alternatives to foreclosure, and lost time, energy, and effort.

      2. *Elements and Pleading of Intentional and Negligent Misrepresentation*

"The essential elements of . . . intentional misrepresentation are (1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage. [Citations.] The essential elements of . . . negligent misrepresentation are the same except that it does not require knowledge of falsity but instead requires a misrepresentation of fact by a person who has no reasonable grounds for believing it to be true." (*Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217, 230-231.)

"Causes of action for intentional and negligent misrepresentation sound in fraud and, therefore, each element must be pleaded with specificity. [Citations.] 'The specificity requirement means a plaintiff must allege facts showing how, when, where, to whom, and by what means the representations were made, and, in the case of a corporate defendant, the plaintiff must allege the names of the persons who made the representations, their authority to speak on behalf of the corporation, to whom they spoke, what they said or wrote, and when the representation was made.' [Citation.] However, 'the requirement of specificity is relaxed when the allegations indicate that "the defendant must necessarily possess full information concerning the facts of the controversy" [citations] or "when the facts lie more in the knowledge of the" ' defendant. [Citation.] The specificity requirement serves two purposes: 'to apprise the defendant of

20

the specific grounds for the charge and enable the court to determine whether there is any basis for the cause of action.' " (*Daniels, supra*, 246 Cal.App.4th at pp. 1166-1167.)

### 3. *Analysis*

#### a. *Misrepresentations*

Among the representations appearing in the first (intentional misrepresentation) and second (negligent misrepresentation) causes of action, plaintiff asserted that defendants' agents repeatedly informed him that defendants were either not in receipt of all documents requested of him or that they "required more and more documentation, even though [he] diligently verified both delivery and receipt of said documents, and each time they were sent."  Plaintiff specifically alleged that Nationstar "represented that [p]laintiff was eligible to receive a HAMP loan modification despite the fact that the balance of [p]laintiff's loan precluded him from HAMP eligibility."  Plaintiff further alleged that "Nationstar continued to send [p]laintiff HAMP loan modification applications and continually represented to him that he was eligible to apply for and receive a HAMP modification."[14]

Additionally, plaintiff specifically alleged " 'facts showing how, when, where, to whom, and by what means the representations were made, and . . . the names of the persons who made the representations, their authority to speak on behalf of the corporation, to whom they spoke, what they said or wrote, and when the representation was made.' " (*Daniels, supra*, 246 Cal.App.4th at pp. 1166-1167.)  He alleged that Nationstar, its agents, employees, and representatives, including a named individual,

---

[14] Defendants assert that HAMP application forms are commonly used for other modification programs and thus simply sending plaintiff this form did not logically imply Nationstar thought him qualified for HAMP.  We reject this argument in that it is based on facts not in the complaint or in documents that have been the subject of judicial notice.  Moreover, even if the form could be used for other programs, plaintiff specifically alleged that Nationstar represented he was eligible to receive a HAMP modification.

made the representations. He also alleged that the other names and identities of the individuals who made the representations were within the possession of defendant. He represented how, where, and by what means the representations were made, verbally over the phone as well as in writing between Nationstar agents and plaintiff. He alleged the representations were made between January 2014 and May 2015, and that the individuals who made the representations had authority to speak for Nationstar.

We conclude these alleged representations by Nationstar and its agents that plaintiff was eligible to apply for and receive a HAMP modification constitute sufficient misrepresentations as to support intentional and negligent misrepresentation causes of action against Nationstar.[15] Additionally, in light of plaintiff's allegation that Nationstar acted as an agent for U.S. Bank, the representations support the intentional and negligent misrepresentation causes of action against U.S. Bank.

b. *Knowledge of Falsity*

Plaintiff alleged that Nationstar and its agents "knew or should have known that Plaintiff would not qualify under the threshold HAMP guidelines. Nationstar regularly engages in loan modification activities including modifying loans under the HAMP program. The requirement that the loan amount be no greater than $729,750 is one of the

---

[15] We note that a representation is generally not actionable unless it concerns "past or existing facts." (*Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells* (2000) 86 Cal.App.4th 303, 309, 310.) Although a false promise to perform in the future can support a cause of action for intentional misrepresentation, it does not support a cause of action for negligent misrepresentation. (*Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 158, 159 ["Simply put, making a promise with an honest but unreasonable intent to perform is wholly different from making one with no intent to perform and, therefore, does not constitute a false promise. [W]e decline to establish a new type of actionable deceit: the negligent false promise"].) Thus, an alleged promise to grant a loan modification does not concern past or existing facts, and cannot be the basis for a negligent misrepresentation cause of action. However, here, the alleged misrepresentation is that plaintiff *was eligible to apply for and receive* a HAMP modification, which concerns existing facts.

22

threshold requirements under the HAMP program, and Nationstar knew or should have known that there was no way Plaintiff could qualify for a HAMP modification because his loan balance was more than two times higher than the maximum loan amount for HAMP qualification. Yet, Nationstar continued to send Plaintiff HAMP loan modification applications and continually represented to him that he was eligible to apply for and receive a HAMP modification." (Capitalization omitted.)

This was sufficient to allege knowledge of falsity.

### c. *Intent to Induce Reliance*

According to the second amended complaint, Nationstar "intended to induce Plaintiff['s] reliance so that Nationstar could keep Plaintiff in the modification process, collect additional fees for servicing a delinquent mortgage, and ultimately foreclose upon the Subject Property. Further, Plaintiff alleges that Nationstar received additional compensation for every loan modification application they received from Plaintiff." (Capitalization omitted.) Elsewhere, plaintiff alleged that the misrepresentations "were part of Defendants' overall scheme to keep Plaintiff in a modification process it never intended to complete in order to accrue fees and penalties to which it would not have been entitled had Plaintiff never entered into the modification process in the first place. Most, if not all, of the misrepresentations were designed to provide Plaintiff with the false hope that a modification would be granted in order to induce him to continue with the process, even after Defendants had issued denials."

We conclude that these statements were sufficient to allege intent to induce reliance.

### d. *Actual and Justifiable Reliance*

Plaintiff alleged in his second amended complaint that he was justified in relying on Nationstar's misrepresentations "because Nationstar is the servicer of the Subject Loan and regularly engages in the process of offering HAMP loan modifications in accordance with HAMP guidelines and Nationstar sent HAMP applications to Plaintiff

23

on multiple occasions." (Capitalization omitted.) Elsewhere, plaintiff alleged that, "had Plaintiff known that Defendants never intended to grant him a modification, he would not have continued in the process and would have either sold the property or sought the aid of family instead of allowing Defendants to unjustifiably enrich themselves at his expense."

Plaintiff was already in default at the relevant times. According to the allegations of the second amended complaint, based on Nationstar's misrepresentations about his application and eligibility for a HAMP loan modification, plaintiff forewent other means to become current on his loan or even sell his property. Plaintiff allegedly did so in reliance on the representations of Nationstar, a mortgage loan servicer which regularly worked with HAMP loan modifications. Thus, he adequately pleaded reliance.[16]

### e. *Damages and Conclusion*

Plaintiff alleged: "As a proximate result of Defendants' conduct in violating their promises and representations to Plaintiff, Plaintiff has suffered injury, damage to his credit, increased interest and arrears that he would not have otherwise incurred, faces the loss of the Subject Property through foreclosure, and forewent seeking other remedies to cure the default. Further, Defendants charged additional late fees and penalties to Plaintiff's mortgage account. Plaintiff expended time, energy and effort into the loan modification process, granting Defendant access to his personal financial records, which they would not have been entitled to receive . . . . Plaintiff has had to retain an attorney, expend legal costs and have suffered further damages in an amount to be shown according to proof at the time of trial."

---

[16] Defendants assert that plaintiff easily could have discovered the qualifications for HAMP loan modifications through online and other research, and therefore he cannot establish justifiable reliance. We agree with plaintiff that defendants' assertions are factual allegations outside of the pleadings and have no place in our determination as to whether plaintiff has stated a cause of action.

Plaintiff alleged that he was suffering harm to his credit following BANA's freezing of his accounts in 2008, six years before any misrepresentations by Nationstar. However, construing the second amended complaint liberally (*Longshore, supra*, 25 Cal.3d at p. 22; *Daniels, supra*, 246 Cal.App.4th at p. 1162), he also alleged that his credit continued to suffer ongoing damage.

The complaint further alleges plaintiff might have pursued "other remedies" and "alternative remedies" had he not relied on Nationstar's alleged misrepresentations. At one point, plaintiff referred to other remedies, "such as refinancing while there was equity in the property, a short sale of the property, borrowed money from family and friends, or organized investors to pay off the delinquent balance."

Additionally, plaintiff claimed to have been damaged in the form of increased interest, arrears, penalties, and fees that he would not have otherwise incurred.

Plaintiff further alleges that he expended time, energy and effort in the loan modification process. In *Bushell v. JPMorgan Chase Bank, N.A.* (2013) 220 Cal.App.4th 915, another panel of this court recited that the plaintiffs alleged they sustained damages "by the considerable time they spent repeatedly contacting Chase and repeatedly preparing documents at Chase's request; by discontinuing efforts to pursue a refinance from other financial institutions or to pursue other means of avoiding foreclosure (such as bankruptcy restructuring, or selling or renting their home); by having their credit reports further damaged; and by losing their home and making it unlikely they could purchase another one." (*Id*. at p. 928.) The *Bushell* court concluded that the plaintiffs adequately alleged damages in connection with their fraud cause of action. (*Id*. at pp. 928, 930, 931; but see *Lueras, supra*, 221 Cal.App.4th at p. 79 [time and effort spent assembling materials for loan modification application amounts to a "sort of nominal damage subject to the maxim *de minimis non curat lex*—i.e., the law does not concern itself with trifles"].)

Liberally construing plaintiff's allegations, as we must (*Longshore, supra*, 25 Cal.3d at p. 22; *Daniels, supra*, 246 Cal.App.4th at p. 1162), we conclude that he has sufficiently pleaded damages resulting from Nationstar's (and, by extension, U.S. Bank's) alleged intentional and negligent misrepresentations.[17]

Accordingly, because plaintiff sufficiently pled each element of the causes of action for intentional and negligent misrepresentations, the trial court erred in sustaining Nationstar and U.S. Bank's demurrer to the first and second causes of action.

B. *Negligence--SLS, Nationstar, and U.S. Bank*

1. *The Parties' Contentions*

In his supplemental brief following transfer, plaintiff contends that *Sheen, supra*, 12 Cal.5th 905 is distinguishable from the facts of this case and therefore does not support a finding that the trial court properly sustained the demurrer as to his negligence cause of action. According to plaintiff, this court correctly determined in its prior opinion that the second amended complaint adequately pled a negligence claim. Defendants SLS, Nationstar, and U.S. Bank disagree, arguing that plaintiff's negligence cause of action is foreclosed by *Sheen*. Defendants assert that, in light of *Sheen*, plaintiff has not stated a negligence cause of action, as they owed him no duty to use reasonable care in handling

---

[17] Relevant to damages, plaintiff also alleged that he was forced to file a bankruptcy petition to stop the foreclosure sale on the property. However, this occurred while BANA was still the loan servicer, long before Nationstar, or its misrepresentations, would be implicated. Moreover, while plaintiff alleges that he "faces the loss of the Subject Property through foreclosure," he does not allege that the subject property was indeed foreclosed upon. Facing the possibility of foreclosure, without more, does not amount to compensable damages. Finally, plaintiff's reference to retaining an attorney and legal costs would not give rise to compensable damages. (*Khajavi v. Feather River Anesthesia Medical Group* (2000) 84 Cal.App.4th 32, 62 [" 'In the absence of a statute authorizing attorneys' fees as an element of damages, or of a contract to pay such fees in event of the party's recovery, attorneys' fees paid by a successful party in an action are never recoverable against the unsuccessful party' "].)

his loan modification applications under general negligence principles.  We agree with defendants.

### 2. *Elements of Negligence and the Negligence Allegations in the Second Amended Complaint*

To support a negligence cause of action, a plaintiff must plead and prove: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the duty, and (3) the breach was a proximate or legal cause of the plaintiff's injuries.  (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 477.)  "We start by identifying the allegedly negligent conduct by [defendants] because our analysis is limited to 'the specific action the plaintiff claims the particular [defendants] had a duty to undertake in the particular case.' "  (*Lueras, supra*, 221 Cal.App.4th at p. 62, quoting *Vasquez v. Residential Investments, Inc.* (2004) 118 Cal.App.4th 269, 280.)

The second amended complaint alleges that Nationstar, SLS, and U.S. Bank acted unreasonably throughout the loan modification process "by failing to accurately and reasonably evaluate Plaintiff for a loan modification"; by mishandling and losing [his] financial documents; by "misdirect[ing] Plaintiff"; by failing to inform plaintiff of the documents that were required for the loan modification; by forcing plaintiff to submit the same documents repeatedly; and by misrepresenting that plaintiff was eligible for a HAMP loan modification for which his loan was not qualified.  Plaintiff asserted that, as a proximate cause of defendants' negligence, he "suffered injury, damage to his credit, increased interest and arrears that he would not have otherwise incurred, forewent seeking other remedies and solutions, has incurred legal fees and costs, and now face[s] the possible foreclosure proceedings and the loss of the Subject Properties."

### 3. *Analysis*

Plaintiff's negligence cause of action is predicated on the theory that defendants owed him a duty of care to exercise reasonable care in reviewing and processing his loan modification applications.  The source of this duty is not grounded in any statute or

27

regulation. Nor is it grounded in the specific language of his mortgage contract. Instead, plaintiff claims that the duty arises as a matter of law under general negligence principles--i.e., the common law. As we shall explain, plaintiff's negligence cause of action is foreclosed by *Sheen*.

Recovery in a negligence action depends as a threshold matter on whether the defendant had ' "a duty to use due care toward an interest of [the plaintiff's] that enjoys legal protection against unintentional invasion." ' " (*Gas Leak, supra,* 7 Cal.5th at p. 397.) "Whether a duty of care exists is a question of law to be determined on a case-by-case basis." (*Lueras, supra*, 221 Cal.App.4th at p. 62.)

"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." (*Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1096.) Additionally, California law generally does not impose a duty of care to avoid causing purely economic losses in negligence cases. (*Gas Leak, supra,* 7 Cal.5th at pp. 398-400.)

" '[T]he issue of whether a tort duty exists for mortgage modification has divided California courts for years.' " (*Sheen, supra*, 12 Cal.5th at p. 915.) In determining whether such a duty existed, courts balanced the *Biakanja* factors, "among which are [(1)] the extent to which the transaction was intended to affect the plaintiff, [(2)] the foreseeability of harm to him, [(3)] the degree of certainty that the plaintiff suffered injury, [(4)] the closeness of the connection between the defendant's conduct and the injury suffered, [(5)] the moral blame attached to the defendant's conduct, and [(6)] the policy of preventing future harm." (*Nymark v. Heart Fed. Savings & Loan Assn*, *supra*, 231 Cal.App.3d at p. 1098, citing *Biakanja v. Irving, supra*, 49 Cal.2d at p. 650.)

As we have explained, our Supreme Court recently addressed the issue of whether a common law tort duty exists in the mortgage modification context. In *Sheen*, our high court concluded that a lender does *not* owe a borrower a tort duty of care sounding in

28

general negligence principles to "process, review, and respond carefully and completely to" a loan modification application so as to avoid causing purely economic losses, that is, pecuniary losses unaccompanied by property damage or personal injury. (*Sheen, supra*, 12 Cal.5th at p. 922.) Such a claim arises from the mortgage contract between a borrower and his or her lender and therefore falls within the ambit of the economic loss rule (*id*. at p. 915), which "functions to bar claims in negligence for pure economic losses in deference to a contract between litigating parties." (*Id*. at p. 922, see *id*. at p. 915 [explaining that the economic loss rule "bars recovery in negligence for pure economic losses when such claims would disrupt the parties' private ordering, render contracts less reliable as a means of organizing commercial relationships, and stifle the development of contract law"].)[18] The economic loss rule precludes claims that arise from, or are not independent of, an underlying contract between the parties. (*Id*. at p. 923.)[19] As part of its analysis regarding the application of the economic loss rule in the loan modification

---

[18] The economic loss rule has been applied in various contexts, including in circumstances where the litigating parties have a contractual relationship. (*Sheen, supra*, 12 Cal.5th at p. 922.) In this context, the rule " ' "prevent[s] the law of contract and the law of tort from dissolving one into the other." ' " (*Ibid*.) "The Restatement states this form of the economic loss rule thusly: '[T]here is no liability in tort for economic loss caused by negligence in the performance or negotiation of a contract between the parties.' " (*Id*. at p. 923.) This rule serves several purposes: "[I]t 'protects the bargain the parties have made against disruption by a tort suit,' " and " 'allows parties to make dependable allocations of financial risk without fear that tort law will be used to undo them later.' " (*Ibid*.) " 'Viewed in the long run,' therefore, 'the rule prevents the erosion of contract doctrines by the use of tort law to work around them.' " (*Ibid*.)

[19] As the *Sheen* court recognized, the economic loss rule does not bar all tort claims for monetary losses between contractual parties, including fraud and intentional misrepresentation claims, as such claims are independent of a defendant's breach of contract. (*Sheen, supra*, 12 Cal.5th at pp. 923-924 [explaining that tort claims are permitted in contract cases when " 'the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm' "].)

context, the *Sheen* court cited, with approval, federal and state court decisions from outside of California holding that lenders *and* loan servicers do not have a common law tort duty requiring them to use reasonable care in reviewing and processing loan modification applications. (See *id.* at pp. 925-927 [explaining that application of the economic loss rule in the loan modification context is consistent with the general rule that " 'a lender owes no duty of care to a borrower when the lender's involvement in the loan transaction does not exceed its customary role in arms-length lending and servicing' "].)

In finding that a lender owes no common law duty to a borrower to exercise reasonable care in reviewing and processing a loan modification application, the *Sheen* court resolved a split of authority among the California Courts of Appeal and expressly disapproved of our prior opinion in this case to the extent it is inconsistent with the views expressed in *Sheen*. (*Sheen, supra*, 12 Cal.5th at pp. 919-920, 948, & fn. 12.) In doing so, the court explained that the multifactor approach articulated in *Biakanja* for ascertaining a duty of care (on which we relied in our prior opinion) does not apply in the loan modification context when, as here, "the litigants are in contractual privity and the plaintiff's claim is not 'independent of the contract arising from principles of tort law.' " (See *Sheen, supra,* 12 Cal.5th at pp. 922, 936-942 [explaining why the *Biakanja* factors do not apply in the loan modification context, noting that *Biakanja* does not displace the economic loss rule when that rule squarely applies].)

Having reconsidered the cause in light of *Sheen* as directed by our Supreme Court, we conclude that plaintiff's negligence cause of action is subject to dismissal. Plaintiff alleged no facts which would support the existence of a common law duty of care owed to him by U.S. Bank, SLS, or Nationstar. And plaintiff has not shown that he could amend his complaint to overcome this deficiency.

We are unpersuaded by plaintiff's contention that a contrary result is warranted because *Sheen* is factually distinguishable. In support of his negligence cause of action, plaintiff alleged that U.S. Bank, SLS, and Nationstar owed him a duty of care to act

30

reasonably during the reviewing and processing of his loan modification applications based on the *Biakanja* factors. However, as we have explained, the *Sheen* court unequivocally rejected the notion that the *Biakanja* factors can support the conclusion that a lender (or loan servicer) owes a borrower a tort duty sounding in general negligence principles in the loan modification context. (*Sheen, supra,* 12 Cal.5th at pp. 915, 922, 936-942.) In our view, *Sheen* makes clear that plaintiff has not stated a negligence cause of action. Any factual differences between this case and *Sheen* have no impact on this conclusion. As we have explained, the *Sheen* court held that the economic loss rule categorically precludes common law negligence claims against lenders (and loan servicers) which are predicated on the failure to exercise due care in reviewing and processing loan modification applications.

We note that plaintiff is not without a remedy for the purported mishandling of his loan modification applications. As we have discussed, he adequately pleaded causes of action against U.S. Bank and Nationstar for intentional and negligent misrepresentation, which are separate and distinct torts from negligence. (See *Sheen, supra,* 12 Cal.5th at p. 943 & fn. 10 [noting that "there are causes of action *other* than a general claim of negligence (e.g., promissory estoppel, negligent and intentional misrepresentation) for failing to exercise reasonable care in processing, reviewing, and responding to a borrower's loan modification application that may offer recourse to borrowers who suffer injury due to missteps by a lender (or loan servicer) in connection with the handling of a mortgage modification application"].) Nothing in *Sheen* precludes such claims in the mortgage modification context. (See *id.* at pp. 916, 923, 924, 943 & fn. 10.)

C. *Trespass to Land--Nationstar*

1. *The Parties' Contentions*

Plaintiff asserts that the trial court erred in sustaining defendants' demurrers as to his cause of action for trespass to land. According to plaintiff, the fact that he defaulted on his mortgage payments in 2009 and that a notice of trustee's sale was recorded on

August 4, 2014, "have no effect on [plaintiff's] possession of the Subject Property in August 2014." According to plaintiff, until the property sold, it was his. Plaintiff asserts that he properly pleaded that he owned and possessed the land when Cyprexx entered.

Defendants respond that the trial court correctly concluded that plaintiff's allegations were insufficient because they did not show that defendants were not authorized to enter the premises in light of plaintiff's default. Defendants assert that section 9 of the deed of trust, which was the subject of their granted request for judicial notice, authorized entry when the borrower was in default. Defendants assert that consent is a complete defense to a trespass claim, and in section 9 of the deed of trust, plaintiff consented to an entry such as that performed by Cyprexx.

### 2. *Elements of Trespass to Land*

" 'Trespass is an unlawful interference with possession of property.' [Citation.] The elements of trespass are: (1) the plaintiff's ownership or control of the property; (2) the defendant's intentional, reckless, or negligent entry onto the property; (3) lack of permission for the entry or acts in excess of permission; (4) harm; and (5) the defendant's conduct was a substantial factor in causing the harm." (*Ralphs Grocery Co. v. Victory Consultants, Inc.* (2017) 17 Cal.App.5th 245, 261-262.) " 'Where there is a consensual entry, there is no tort, because lack of consent is an element of the wrong.' " (*Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1043.)

### 3. *Section 9 of the Deed of Trust*

Section 9 provides, in pertinent part: "If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under the Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to

32

protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. . . . *Securing the Property includes*, but is not limited to, *entering the Property to* make repairs, *change locks*, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off."  (Italics added.)

### 4. *Analysis*

Plaintiff has alleged in the second amended complaint that, on or about August 15, 2014, Nationstar hired Cyprexx to enter onto the property "and change the locks on his doors."  Plaintiff only learned that this occurred because a notice was placed on the door. Plaintiff called Cyprexx, and a representative told him that Nationstar had hired Cyprexx "to secure the premises and to 'winterize' it."  Plaintiff averred that he "was only recently able to gain access to the premises because of the locked doors."  He further alleged that all of his personal effects and furniture were still in the property when Cyprexx entered the premises and changed the locks.  Plaintiff asserted that Cyprexx entered onto the property "and changed the locks without [plaintiff's] knowledge or consent."  With regard to damages in connection with this cause of action, plaintiff asserted that he was unable to enter the premises, and he suffered emotional distress upon learning that strangers had entered his house "and changed the locks without his knowledge or consent.  Further Plaintiff was forced to expend funds to hire a locksmith to enter the premises to change the locks again and now has a caretaker maintaining the property to ensure no one else trespasses onto the property when Plaintiff is not there."

That plaintiff was in default is not disputed.  Thus, plaintiff "fail[ed] to perform the covenants and agreements contained in" the deed of trust.  A notice of trustee's sale was recorded on August 4, 2014.  As a result of plaintiff's failure to perform, under section 9 of the deed of trust, Nationstar, as loan servicer, was authorized to, among other things, enter the property and "change locks."  That is exactly what plaintiff alleges

Cyprexx, as Nationstar's agent, did, and no more. The action taken by Cyprexx, on behalf of Nationstar, was expressly authorized under section 9 of the deed of trust.

Thus, plaintiff failed to allege a legally sufficient cause of action sounding in trespass to land because there are no allegations that Nationstar, or Cyprexx on its behalf, exceeded the scope of the action authorized under the deed of trust. As the trial court correctly concluded, the second amended complaint is silent as to how Nationstar lacked authority to enter onto the property and change the locks, particularly in light of the express provisions of the deed of trust authorizing such action.

Plaintiff asserts that no amendment to the trespass to land cause of action is necessary. However, he further represents that he can amend the second amended complaint to address arguments concerning the deed of trust. In this regard, he asserts only: "[I]f this Court agrees with the trial court that [plaintiff] should have addressed Respondents['] rights under the Deed of Trust and Notice of Default, [Plaintiff] can allege that unless and until the Subject Property was sold at a trustee's sale, it constituted his property."

We conclude that it is not reasonably possible that the defect in the second amended complaint could be cured by amendment. The only amendment proposed by plaintiff—that at the relevant time the property remained his property—could not change the result. (See generally *Zipperer v. County of Santa Clara, supra*, 133 Cal.App.4th at p. 1020 [where the nature of the claim is clear and under substantive law no liability exists, court should deny leave to amend because no amendment could change the result]; see also *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [plaintiff bears burden of proving amendment would cure defect]; *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [same]; *Mendoza v. JPMorgan Chase Bank, N.A.* (2016) 6 Cal.App.5th 802, 809 [same].)

Accordingly, the trial court properly sustained Nationstar's demurrer to the fourth cause of action without leave to amend.

D. *Unfair Competition Law--SLS, Nationstar, and U.S. Bank*

      1. *The Unfair Competition Law*

The "unfair competition law's scope is broad." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 (*Cel-Tech Communications*).) "[I]t defines 'unfair competition' to include 'any unlawful, unfair or fraudulent business act or practice.' " (*Ibid*., quoting Bus. & Prof. Code, § 17200, fn. omitted.) "By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." (*Cel-Tech Communications*, at p. 180.) "However, the law does more than just borrow. The statutory language referring to 'any unlawful, unfair *or* fraudulent' practice . . . makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law." (*Ibid*.) " 'Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition-acts or practices which are unlawful, or unfair, or fraudulent. "In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa." ' " (*Cel-Tech Communications*, at p. 180.)

"A business practice is 'fraudulent' within the meaning of [Business and Professions Code] section 17200 if it is 'likely to deceive the public. [Citations.] It may be based on representations to the public which are untrue, and " 'also those which may be accurate on some level, but will nonetheless tend to mislead or deceive. . . . A perfectly true statement couched in such a manner that is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under' " the [unfair competition law]. [Citations.] The determination as to whether a business practice is deceptive is based on the likely effect such practice would have on a reasonable consumer.' " (*Klein v. Chevron U.S.A., Inc*. (2012) 202 Cal.App.4th 1342, 1380.) "A 'fraudulent' activity includes any act or practice likely to deceive the public, even if no one is actually deceived." (*Jolley v. Chase Home Finance, LLCI* (2013) 213

Cal.App.4th 872, 907.) " 'Unlike common law fraud, a Business and Professions Code section 17200 violation can be shown even without allegations of actual deception, reasonable reliance and damage.' " (*Brakke v. Economic Concepts, Inc*. (2013) 213 Cal.App.4th 761, 772.)

"The standard for determining what business acts or practices are 'unfair' in consumer actions under the [unfair competition law] is currently unsettled." (*Zhang v. Superior Court* (2013) 57 Cal.4th 364, 380, fn. 9.) Prior to the Supreme Court's opinion in *Cel-Tech Communications*, courts applied a balancing test to determine whether a practice was "unfair" under the unfair competition law. (See, e.g., *Klein v. Earth Elements, Inc.* (1977) 59 Cal.App.4th 965, 969-970.) Specifically, courts would balance the impact of the practice on the alleged victim, against the reasons, justifications, and motives of the alleged wrongdoer. (*Ibid*.) The Supreme Court rejected this approach in *Cel-Tech Communications*, an anti-competitive practices case, holding that a cause of action for unfair business practices must "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." (*Cel-Tech Communications, supra*, 20 Cal.4th at pp. 186-187.) Although *Cel-Tech Communications* disapproved of applying the balancing test in consumer cases, the Supreme Court expressly limited that holding to anti-competitive practices cases, stating: "Nothing we say relates to actions by consumers." (*Id*. at p. 187, fn. 12.)

Following *Cel-Tech Communications*, a split in authority has developed concerning the standard for consumer claims under the "unfair" prong of the unfair competition law. (Compare *Smith v. State Farm Mutual Automobile Ins. Co*. (2001) 93 Cal.App.4th 700, 718-719 [adopting the pre-*Cel-Tech Communications* balancing test] with *Gregory v. Albertson's, Inc.* (2002) 104 Cal.App.4th 845, 854 [adopting the "tether[ing]" test]; see also *Camacho v. Automobile Club of Southern California* (2006) 142 Cal.App.4th 1394, 1403 [adopting the test for unfairness set forth in 15 U.S.C. § 45(n)].) This court long ago adopted the balancing test (*Progressive West Ins. Co. v.*

36

*Superior Court* (1999) 135 Cal.App.4th 263, 285-286) and, in the absence of any discussion of the appropriate standard by the parties, we continue to apply that test.

2. *Plaintiff's Contentions*

Plaintiff asserts that the trial court erred in sustaining defendants' demurrers to the sixth cause of action, which alleges a violation of the unfair competition law, as defendants' actions "improperly reviewed him for a loan modification and, in fact, reviewed him for a program in HAMP that he could have never qualified for." He argues promissory fraud is a form of deceit prohibited by subdivision (4) of Civil Code section 1710, and that his allegations suffice to state a cause of action under the "unlawful" prong. He adds that whether conduct qualifies as "unfair" within the meaning of the unfair competition law is an issue of fact not appropriate for demurrer and that defendants' practices were likely to deceive consumers. Plaintiff further asserts that, for largely the same reasons, defendants' conduct is actionable under the "fraudulent" prong.

3. *Analysis*

The complaint alleges defendants subjected plaintiff to a fraudulent application process, stringing him along with false assurances that a loan modification would be forthcoming or that he was eligible for a HAMP modification, and then claiming, falsely and repeatedly, that plaintiff failed to supply requested documents. The complaint further alleges that defendants intentionally delayed the loan modification process by demanding that plaintiff submit the same documents over and over again, all in an attempt to increase arrears, penalties, and fees. These allegations adequately support a cause of action under the "fraudulent" and "unfair" prongs of the unfair competition law. (See *Rufini v. CitiMortgage, Inc*. (2014) 227 Cal.App.4th 299, 310 [allegation that lender "pretended to engage in loan modification efforts while actually intending to foreclose" stated unfair competition law cause of action under "fraudulent" and "unfair" prongs]; *Majd v. Bank of America, N.A.* (2015) 243 Cal.App.4th 1293, 1304 [borrower sufficiently alleged

37

violation of the unfair competition law based, in part, on lender's false assertion that he failed to provide required documentation].)

The parties' briefing also discusses the remedies available to plaintiff in connection with this cause of action and whether he is entitled to them. "While the scope of conduct covered by the [unfair competition law] is broad, its remedies are limited. [Citation.] A[n] [unfair competition law] action is equitable in nature; damages cannot be recovered. [Citation.] Civil penalties may be assessed in public unfair competition actions. . . . [Citation.] We have stated that under the [unfair competition law], '[p]revailing plaintiffs are generally limited to injunctive relief and restitution.' " (*Korea Supply Co. v. Lockheed Martin Corp*. (2003) 29 Cal.4th 1134, 1144.) Plaintiff seeks both injunctive relief, enjoining the sale of the property, and disgorgement and restitution of late fees, penalties, and charges. Thus, plaintiff sought the appropriate remedies. (See *ibid*.) At this stage, reviewing the sustaining of defendants' demurrers, we do not consider whether plaintiff will be able to prove his entitlement to these remedies or the scope of the appropriate remedies. We conclude the trial court erred in sustaining the demurrers to the unfair competition law cause of action.

We are unpersuaded by defendants' contention that *Sheen* compels a contrary conclusion as to SLS. Nothing in *Sheen* undermines our determination that the second amended complaint sufficiently states a cause of action against SLS under the "fraudulent" and "unfair" prongs of the unfair competition law. The fact that plaintiff has not stated a negligence cause of action does not, as defendants suggest, support dismissal of the unfair competition law claim as to SLS for failure to state a violation of the "unlawful" prong. To be considered unfair competition, a business act or practice need only meet one of the three criteria--unlawful, unfair, *or* fraudulent. (*Buller v. Sutter Health* (2008) 160 Cal.App.4th 981, 986.) In short, because we have found that plaintiff has alleged conduct that meets the definition of a "fraudulent" and "unfair" business practice, we need not and do not decide whether the conduct meets the definition of an

38

"unlawful" business practice. (See *Morgan v. AT&T Wireless Services, Inc*. (2009) 177 Cal.App.4th 1235, 1255 [declining to decide whether conduct met definition of "unfair" or "unlawful" business practice because the court found plaintiffs had adequately alleged a fraudulent business practice].)

We decline to consider the arguments raised by defendants in their supplemental brief that are beyond the scope of the Supreme Court's transfer order. These arguments, in essence, ask us to reconsider issues we reached in our prior opinion, the outcome of which are not dependent on the new rule of law stated in *Sheen*. (See Cal. Rules of Court, rule 8.200(b)(2) [following transfer from Supreme Court, "[s]upplemental briefs must be limited to matters arising after the previous Court of Appeal decision in the cause, unless the presiding justice permits briefing on other matters"]; *Dahms v. Downtown Pomona Property & Business Improvement Dist*. (2009) 174 Cal.App.4th 708, 711, fn. 1 [only considering arguments that depended on the new rules of law stated by the Supreme Court].)

## DISPOSITION

The order on the demurrer to the first amended complaint that we deem to incorporate a judgment of dismissal as to BANA is affirmed. The judgments of dismissal in favor of U.S. Bank, SLS, and Nationstar are reversed. The orders sustaining the demurrers to the second amended complaint are affirmed in part and reversed in part. The orders are reversed as to the causes of action for intentional misrepresentation (first cause of action) and negligent misrepresentation (second cause of action) insofar as

asserted against Nationstar and U.S. Bank, and as to the causes of action for violations of the unfair competition law (sixth cause of action) insofar as asserted against Nationstar, U.S. Bank, and SLS.  In all other respects, the judgments are affirmed.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(3), (5).)

       /s/

Duarte, J.

We concur:

   /s/

Mauro, Acting P. J.

   /s/

Boulware Eurie, J.